Odell ARNOLD, Appellant,

v.

STATE of Indiana, Appellee.

No. 381S87.

Supreme Court of Indiana.

June 16, 1982.

Ray L. Szarmach, East Chicago, for appellant.

Linley E. Pearson, Atty. Gen., Richard Albert Alford, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

This is a direct appeal from a conviction for rape, a class B felony, Ind.Code Ann. § 35–42–4–1 (Burns 1979). The defendant-appellant, Odell Arnold, was sentenced to a prison term of twelve years. On appeal, he raises four issues:

(1) Whether a certain exhibit was inadmissible because there was an incomplete chain of custody.

(2) Whether the defendant's motion for a directed verdict was erroneously denied.

(3) Whether there was sufficient evidence to support the verdict.

(4) Whether the court erred in imposing the sentence.

The facts favorable to the State's case show that on March 14, 1980, in the early morning, the defendant knocked on the door of L.W.'s apartment in Gary. L.W. opened the door a bit to tell him to leave and he forced his way in. He then pushed her into the bedroom where he forced her to have sexual intercourse with him, threatening to kill her and brandishing a butter knife. When he left several hours later, L.W. immediately called the police and went to Mercy Hospital.

## I.

The State moved to admit into evidence a "rape kit" assembled by a physician and other medical personnel in the emergency room of Mercy Hospital. The kit contained vaginal swabs and vaginal smears obtained from L.W. during the examination, and the underpants and robe she was wearing at the time of the assault. The examining physician had already testified that the rape kit identified as State's Exhibit A was the rape kit that was put together as a result of his examination of L.W. A forensic serologist had already testified that she had examined the kit identified as State's Exhibit A and had found, through chemical analysis, semen on the vaginal swabbings and on the underpants, and had found spermatozoa by microscopic examination of the

vaginal smears. The defense objected to admission of the exhibit on the ground that there was an improper chain of custody. The defendant claims that the court erred in overruling the objection.

Defendant's argument is, first, that there was no testimony from the examining physician as to how he recognized State's Exhibit A, no testimony about any identifying marks on the exhibit, and no testimony from the doctor concerning the contents of the kit or what, if any connection he had with the contents. Concerning the physician's testimony as to his connection with the contents of the kit, the record does not support the defendant's claim because the physician testified that in the course of his examination of L.W., the rape kit identified in court as Exhibit A was put together in the emergency room. Regarding the absence of testimony by the physician as to the contents of the kit, we do not see in what way this affects the chain of custody claim. As to the point that there was no testimony from the examining physician concerning how he recognized State's Exhibit A, again we do not see in what way this affects the chain of custody claim. We observe, moreover, that the defense had an opportunity upon cross-examination to delve into these questions as to the identity and authenticity of the exhibit, but did not do so.

Defendant's second argument about the chain of custody issue is that the forensic serologist did not testify concerning how she identified Exhibit A, or about whether the exhibit contained items related to the rape. Again the record does not support the assertion because it reveals that the serologist testified that she subjected the contents of the kit identified as State's Exhibit A to testing. Furthermore, as in the case of the physician's testimony, the defense did not avail itself of the opportunity to probe the issue of the authenticity of the exhibit.

Defendant's third argument is that neither State's Exhibit A nor its contents were shown to the prosecuting witness, L.W., when she was on the witness stand. The defendant does not discuss in what way this affects the chain of custody issue.

Finally, the defendant asserts that the fact that the prosecuting witness testified that she took a bath before going to the hospital creates a grave doubt as to whether Exhibit A was actually the kit prepared for her in the emergency room. This argument does no more than raise the possibility of tampering with, or substitution of, evidence. There is no indication in the record that the defense at trial attempted to show any tampering or substitution. We have said many times that the State is not required to negate every remote possibility of tampering. *Pollard v. State*, (1979) Ind., 388 N.E.2d 496; *Williams v. State*, (1979) Ind., 387 N.E.2d 1317.

The purpose of the rule requiring that the State show a continuous chain of custody, or continuity of possession, of fungible evidence is to prevent tampering, loss, substitution, or mistake with respect to an exhibit. *Bruce v. State*, (1978) 268 Ind. 180, 375 N.E.2d 1042, *cert. den.* 439 U.S. 988, 99 S.Ct. 586, 58 L.Ed.2d 662.

The rule operates, however, only for the period after the evidence comes into the possession of law enforcement personnel. *Downing v. State*, (1978) Ind., 381 N.E.2d 554; *Williams v. State*, (1978) 269 Ind. 265, 379 N.E.2d 981; *Thornton v. State*, (1978) 268 Ind. 456, 376 N.E.2d 492. Nothing in the record before us indicates that the police took custody of the exhibit until after the serologist had completed her tests, and sealed the kit and locked it in a vault in her laboratory to await being picked up by the police. For the period before this, the defense had the opportunity to probe the authenticity of the evidence through cross-examination. The defendant does not address himself to the period during which police had custody. His argument on the chain of custody issue therefore fails.

## II.

The defendant next claims that the trial court erred in denying his motion

for a directed verdict at the close of the State's case. He acknowledges that a defendant is entitled to a directed verdict only if there is a total lack·of evidence on an essential issue, or if there is no conflict in the evidence and it is susceptible of only one inference, in favor of the accused. *Mitchell v. State*, (1978) 268 Ind. 437, 376 N.E.2d 473. He also acknowledges that a conviction for rape may be sustained solely on the basis of testimony of the prosecuting witness. *Smith v. State*, (1971) 255 Ind. 687, 266 N.E.2d 216. His argument, notwithstanding these acknowledgments, is that the testimony of the prosecuting witness was not supported or corroborated by admissible evidence and also that her testimony was not credible. Since the conviction could be affirmed on the basis of the prosecuting witness' testimony alone, the first contention has no merit. In any event, as discussed above, there was admissible evidence corroborating the element of penetration.

■ Treating the second contention as a claim that the witness' testimony was inherently incredible and that there was, therefore, a total lack of evidence to support the verdict, we must reject it. The testimony of L.W. that when the defendant knocked at her door and told her that he was a friend of her cousin, she opened the door just a bit, in spite of her belief that he was lying, to tell him to go away, and that the defendant pushed the door open, forced her upon threat of death to have sexual intercourse with him, and showed her some identification papers in his wallet after the forced intercourse does not exemplify testimony of "incredible dubiosity" as we held was present in the fact in *Gaddis v. State*, (1969) 253 Ind. 73, 251 N.E.2d 658, or testimony that is "inherently improbable" as we held was present in the facts in *Penn v. State*, (1957) 237 Ind. 374, 146 N.E.2d 240. L.W.'s credibility, therefore, is not a proper subject for our review of this issue. There is no argument that the State otherwise failed to make out a prima facie case of rape. The denial of the motion for a directed verdict was not error.

## III.

■ The defendant's next claim is that the verdict of the jury was contrary to the law and was not sustained by the evidence. In reviewing claims of insufficiency, this Court neither weighs the evidence nor resolves questions of credibility. We only look to the evidence and reasonable inferences therefrom that support the verdict. *Smith v. State*, (1970) 254 Ind. 401, 260 N.E.2d 558. The conviction will be affirmed if from that viewpoint there is evidence of probative value from which a reasonable trier of fact could infer that an accused was guilty beyond a reasonable doubt. *Taylor v. State*, (1973) 260 Ind. 64, 291 N.E.2d 890; *Glover v. State*, (1970) 253 Ind. 536, 255 N.E.2d 657. The defendant argues that although the prosecuting witness testified that the defendant had sexual intercourse with her by force, her testimony as a whole cannot be considered substantial enough so that the verdict should not be disturbed. He claims that it is inconceivable that L.W. would have let him into her apartment at one o'clock in the morning if she had thought that he was lying about who he was and that he would go through his wallet in her presence if he had just raped her. He claimed to have known L.W. and to have had intercourse with her with her consent. As we discussed in II above, the testimony of L.W. is not inherently incredible. We will, therefore, only look to the record to determine if there was sufficient evidence from which the jury could have concluded that the defendant was guilty of rape. The statute provides in pertinent part:

"A person who knowingly or intentionally has sexual intercourse with a member of the opposite sex when:

(1) the other person is compelled by force or imminent threat of force ... commits rape, a class B felony." Ind. Code Ann. § 35–42–4–1 (Burns 1979).

■ The prosecuting witness testified that the defendant knocked at her apartment door at 1:00 a.m. on March 14, 1980. When she opened the door slightly to tell

him to go away, he forced his way into the apartment, pushed her into the bedroom, told her to take her nightgown off, tore it off her when she refused, forced her to have sexual intercourse, put a pillow over her face when she refused to assist him in a second penetration, forced her to have intercourse again, picked up a butter knife and threatened to kill her if she did not do as he said, and finally left at 6:30 or 7:00 a.m. L.W. waited ten minutes to assure herself that the defendant had left the building and then went to a friend's apartment. She then called the police from the apartment manager's telephone. The police advised her to go to Mercy Hospital, where she then went and was examined, as discussed above. In court she identified the defendant as the man who raped her.

The physician testified as discussed in I above and said that he had found scratches on L.W.'s face. The forensic serologist testified as discussed above.

This was evidence of probative value from which the jury could have concluded beyond a reasonable doubt that the defendant raped L.W.

### IV.

Defendant's final claim concerns the twelve-year prison term. The defendant asserts that the sentence is so greatly disproportionate to the seriousness of the crime as to violate Art. 1, § 16, of the Indiana Constitution, which mandates that all penalties shall be proportioned to the nature of the offense; Art. 1, § 18, which provides that the penal code shall be founded on the principles of reformation, and not of vindictive justice; and the Eighth Amendment to the United States Constitution which prohibits cruel and unusual punishment. He also asserts that it was cruel and unusual punishment for the court to have considered his history of criminal activity in sentencing when there were no admissible convictions in his record. No arguments accompany these assertions, no authorities are cited, and the record of the proceedings does not include the pre-sentence report. The issue is therefore not

properly before us for review. Ind.R. App.P. 8.3(A)(7). We observe, however, that a conviction for rape, a class B felony, exposes a defendant to a sentencing range of six to twenty years. Ind.Code Ann. § 35–50–2–5 (Burns 1979). Rule 2, Appellate Review of Sentences provides that the reviewing court will not revise a sentence authorized by statute unless the sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender, and that a sentence is not manifestly unreasonable unless no reasonable person could find such a sentence appropriate to the particular offense and offender. Applying this standard to the sentence imposed, we cannot say that it is manifestly unreasonable.

The conviction is affirmed.

GIVAN, C. J., and HUNTER, PRENTICE and PIVARNIK, JJ., concur.