**Martin V. DELATORRE, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 72S00–8803–CR–363.**

Supreme Court of Indiana.

Oct. 20, 1989.

Ralph E. Randall, Hays and Randall, Scottsburg, for appellant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Following a jury trial in the Scott County Circuit Court, Defendant–Appellant Martin V. Delatorre was convicted of Rape By Threatening The Use Of Deadly Force, a Class A felony, and was sentenced to a term of fifty (50) years.

Delatorre presents five issues for our consideration in this direct appeal:

1. error in the giving of final instructions;
2. insufficiency of the evidence to support the verdict;
3. admission of improper evidence;
4. insufficient chain of custody shown for admission of the sexual assault evidence kit; and
5. insufficient chain of custody for admission of the suspect kit.

The facts supporting the verdict show that on July 11, 1987, an "old settlers" celebration was held in Lexington, Scott County, Indiana. The victim, F.M., a seventy-five (75) year old resident of Lexington, attended the event with her two brothers. She lived alone and was awakened later that night "with a terrible fear that something was wrong."

She arose and entered her living room where she was confronted by a man in the dark. The man grabbed her, threw something over her head and violently threw her to the floor. He had a strong and painful

hold around her neck and threatened to kill her. He told her he had a knife and demanded and took money from her. He then took her into the bedroom and raped her. F.M. stated she knew the perpetrator to be Delatorre. He lived across the street from her and did odd jobs for her. Although she could not see his face in the dark, she recognized his voice. She said there were other characteristics which were consistent with his, i.e., his size, youth, strength, and the fact that he wore a mustache. She said she had heard his voice many times and knew he was the one who had raped her. Earlier in the investigation she had hesitated to name Delatorre and explained later that he made her swear on her Bible not to report him. She is a very religious person and it disturbed her a great deal and made her reluctant to report the crime or the perpetrator because of having sworn not to do so. After talking to her brothers, she decided to report the incident to the police. She said the perpetrator spoke with a Hispanic accent and said some words in Spanish, that he had referred to the fact he was at the "old settlers" celebration earlier and some people had made fun of him there. She also noticed a foul body odor and the smell of alcohol on his breath. There was testimony that Delatorre was at the "old settlers" celebration, that he bragged about his dancing ability and took part in a dancing contest which he lost. He was very upset at losing the contest. There were also witnesses who observed Delatorre drinking earlier that evening.

## I

Delatorre tendered final Instruction No. 10 which reads as follows:

Evidence was introduced during trial concerning the similarity of the Defendant's pubic hairs with pubic hairs found at the scene of the alleged rape.

Evidence was also introduced that two specimens of hair could be identical in all of the perceptible characteristics and yet not be from the same person.

It is for you to determine the weight and effect this evidence should be given. *Record* at 156.

Janice Lacey, a serologist at the Indiana State Police Laboratory in Evansville, compared samples of Delatorre's head and pubic hair with hairs found on the victim and on her bed sheets. Lacey found the hairs were sufficiently similar to give no basis for exclusion of Delatorre as a suspect. Lacey related that the method of typing she utilized would place the hair examined into only one of three genetic classes. The three classes are Caucasian, Negroid, or Oriental (mongoloid). Consequently, the identification of the hair donor is no more specific than the person's race. The only conclusion to be reached from Lacey's testimony was that the hair came from a general genetic class of Caucasian and that Delatorre is Caucasian. Lacey emphasized that hair analysis is not a basis for individual identification. The trial court modified Delatorre's tendered instruction by deleting the second paragraph and giving the first and third paragraphs. He explained his omission by stating that the second paragraph was a regurgitation of the evidence and it is not the function of the court to invade the province of the jury and tell them what the evidence is.

Delatorre contends the instruction as given was erroneous and misleading to the jury as it carved out the meat of the instruction that hair analysis is not conclusive for the purpose of establishing identity.

■ We first observe that the entire instruction fails to state a principle of law but rather recites facts in evidence. The trial court was proper in observing it is not the duty of the trial court to tell a jury what the evidence is. It would have been proper for the trial court to reject the entire instruction. Although it is arguable whether the instruction was better or worse after the modification, Delatorre did tender the subject and the court did tell the jury it had a right to determine the weight and effect to be given to the evidence. In view of Lacey's testimony, which clearly indicated that hair examination is not the

basis for individual identification and that her examination did no more than point out that the perpetrator was a Caucasian, we fail to see reversible error presented by the modification of the instruction tendered by Delatorre.

■■ Delatorre contends the trial court erred in refusing his tendered instructions numbered 8 and 9. These instructions proposed to instruct the jury on the lesser included offense of battery.

The victim testified Delatorre had raped her. Delatorre's defense was that he was not the rapist. Where the only point of contention at trial is the issue of the identity of the perpetrator of the offense, it is not error to refuse instructions on lesser included offenses. *Pruitt v. State* (1978), 269 Ind. 559, 564, 382 N.E.2d 150, 153. The trial court was justified in refusing Delatorre's tendered instructions 8 and 9.

## II

■■ Delatorre claims the trial court erred in failing to direct a verdict for the defendant or dismiss the charges since there was insufficient evidence to support the guilty verdict.

Delatorre concedes in reviewing a challenge to the sufficiency of the evidence, this Court will not reweigh the evidence nor judge the credibility of witnesses but will examine the evidence most favorable to the State with all reasonable inferences to be drawn therefrom. *Thomas v. State* (1988), Ind., 519 N.E.2d 143, 144-45. Delatorre also concedes that the uncorroborated testimony of the victim is sufficient to support a conviction but claims one must examine the victim's testimony. Delatorre relies on a showing the victim equivocated to the police as to Delatorre's identity early in the investigation. Her explanation was that Delatorre had forced her to make an oath on her Bible that she would not reveal his identity. The victim testified at trial that she knew Delatorre, was able to recognize his voice, and was sure he was the one who had raped her. The jury heard all of the evidence, believed it and found Delatorre guilty. There was sufficient evidence before them to support their verdict.

■■ Further, Delatorre claims there was insufficient evidence of deadly force to sustain a Class A felony rape conviction. IC 35-41-1-7 defines deadly force as that force which creates a substantial risk of serious bodily injury. Delatorre seems to infer that in a rape case the assailant must threaten to kill the victim while the rape is being perpetrated since such evidence was considered sufficient in *Lamb v. State* (1984), Ind., 462 N.E.2d 1025, 1028 (assailant threatening "Don't make me hurt you" while holding a steel screwdriver-type object); and *Calbert v. State* (1981), 275 Ind. 595, 418 N.E.2d 1158, 1159 (assailant threatening "I'll kill you" while repeatedly slapping the victim). Here Delatorre concedes the evidence demonstrated the assailant told the victim "I am going to tie you up and I have got a knife." In addition to this statement, Tammy Machino, an emergency medical technician called to the scene, stated the victim told her Delatorre had ordered her to lie still or he would kill her; Trooper Robert Neal testified the victim told him the rapist said he had a knife and if she cried out he would use it; and Detective Charles Demlow testified the rapist threatened to kill the victim if she did not do what he told her. Nevertheless, Delatorre maintains there must be proof of deadly force to upgrade the offense to a Class A felony, and since there was no evidence that a knife was ever produced or held to menace the victim, his conviction should be reversed. We do not agree. IC 35-42-4-1 is clear that threatening the use of deadly force is sufficient to upgrade the offense to the status of a Class A felony. Moreover, this Court has consistently held that a weapon need not be displayed in order to establish the threat of deadly force. *See, e.g., Lambert v. State* (1987), Ind., 516 N.E.2d 16, 19-20 (assailant threatened to kill victim, no evidence of weapon), *reh'g granted and conviction rev'd on other grounds* (1989), Ind., 534 N.E.2d 235 (Justices Givan and Pivarnik, dissenting); *Zollatz v. State* (1980), 274 Ind. 550, 554, 412 N.E.2d 1200, 1202 (assailant threatened to pull knife on victim); *Stowers v. State* (1977), 266 Ind. 403, 406, 363 N.E.2d 978, 981 (assailant threatened to kill victim,

reached under car seat as if reaching for concealed weapon). There was sufficient evidence before the jury to justify its finding a Class A felony.

### III

■ The State called Sheriff Gordon Julian to relate the content of a statement taken from Delatorre and to describe an anonymous telephone call that the Sheriff received which first accused Delatorre of this crime. On cross-examination, the defense elicited the following:

Q. Have you ever had any trouble out of this man?

A. No, I didn't even know Martin Delatorre.

*Record,* 382. After that question, a bench conference was held on Delatorre's previously filed and granted limiting motion which sought to preliminarily exclude mention of his prior criminal record. The State sought relief from the motion in order to inquire of Sheriff Julian if he was aware of any involvement of Delatorre with other agencies, arguing that Delatorre had created a false impression that he was of good character without prior trouble. The trial court reasoned that the question put by the defense to the highest elected law enforcement officer in the county left the jury with the distinct impression that this man had no previous trouble with the law and to some extent opened the door on this subject. The court reasoned it would not necessarily be fair to allow the State to introduce Delatorre's entire history based on that question but in all fairness the State ought to be allowed to ask a question in the nature of that proffered by the prosecution. The following then ensued through State interrogation of witness Sheriff Julian:

Q. Sheriff if you recall yesterday we had just completed Mr. Randall's cross examination of you, there was a question asked of you to the extent has the defendant ever given you any or caused you any trouble or given you any problems before to which you answered no, is that correct?

A. That is correct.

Q. Are you aware or have you been informed as to whether the defendant has ever had any problem with other police agencies?

A. Yes I read the—

Q. Okay you are aware of a situation like that?

A. Yes.

*Record,* 385. Delatorre claims this testimony informed, or at the very least inferred to the jury, that Delatorre had a criminal record and that he was prejudiced to such an extent it requires reversal. The State's contention is that Delatorre opened the door by creating a false or potentially misleading impression and the State was allowed to expose as much of Delatorre's prior record as is necessary to dispel the jury's possible misapprehension.

In *Gilliam and Braxton v. State* (1978), 270 Ind. 71,·75–77, 383 N.E.2d 297, 300–02, appellants were charged with unlawful dealing in a controlled substance. On direct examination, Braxton testified she had used heroin over a two year period prior to the events at issue. On cross-examination, the State was permitted to ask her about her involvement in dealing in drugs for that period. This Court held that the defendant had opened the door to the subject by giving to the jury the false or misleading impression that Braxton was a heroin user and herself the helpless victim of those who sell drugs for profit. It was held proper to permit the State to respond to this portrayal of Braxton by showing that during the same period ·she herself dealt in drugs. Although such testimony would not ordinarily have been admissible if offered by the State, it became so by the action of the defendant in opening the door to the subject.

The same situation was presented in *Berkley v. State* (1986), Ind., 501 N.E.2d 399, 400–01, where Berkley, charged with murder, gave the impression by her testimony that she was generally peaceful and engaged in·violence only in cases of self-defense as she related experiences involving violent conduct. The State's rebuttal evidence was held proper regarding her reputation for peacefulness which tended to

contradict this inference by showing her to be of a violent nature. *See also Gross v. State* (1987), Ind., 506 N.E.2d 17, 18–19. We fail to see the trial court abused its discretion by permitting the State to rebut the impression presented by the defense in the limited manner in which it was done.

## IV

Delatorre claims State's Exhibit No. 1, the sexual assault evidence kit, was erroneously admitted since the chain of custody foundation was insufficient. Officer Lacey testified the only items she was to examine in the kit were the hair samples, already referred to in this opinion, and the presence of semen. The semen analysis tests were negative.

Evidence shows that Nurse Sally Shapinsky identified the kit and described the procedures she used to collect the samples. When she went off duty she put the kit in charge of day nurse Lisa Lizenby. Nurse Vickie Shepherd and Doctor William Scott also collected samples for the kit and identified Exhibit No. 1 as the type of kit which would have been used. Shepherd had assisted Shapinsky but could not say this kit was the one being used as Exhibit No. 1. Day Nurse Lizenby testified she found Exhibit No. 1 on her desk in the emergency room when she arrived at work, no one handed the kit to her and the office was not locked at the time. She stated the kit bore Nurse Shapinsky's handwriting and was closed and sealed. She did not break the seal or otherwise open the kit but turned it over to State Police Trooper Robert Neal. Neal then directed the kit to the laboratory technician where it was examined and returned. Delatorre's claim of failure in chain of custody came at the time the kit was left on Nurse Lizenby's desk in an unlocked room. Appellant claims there is no evidence as to who sealed the kit, whether the contents were inventoried prior to sealing and whether the kit had items inserted or removed during the time it lay on the desk in the hospital.

To establish a proper chain of custody, the State is required only to provide evidence which "strongly suggests the exact whereabouts of the evidence at all times" and affords a "reasonable assur-ance" that the evidence passed to trial in an undisturbed condition. *Borom v. State* (1984), Ind., 470 N.E.2d 712, 714. The State is not required to negate every remote possibility of tampering. *Starks v. State* (1987), Ind., 517 N.E.2d 46, 53–54, *reh'g granted in part on other grounds* (1988), Ind., 523 N.E.2d 735 (Justices Givan and Pivarnik, dissenting); *Robles v. State* (1987), Ind., 510 N.E.2d 660, 665, *cert. denied* (1988), —— U.S. ——, 108 S.Ct. 2872, 101 L.Ed.2d 907; *Dunn v. State* (1987), Ind., 506 N.E.2d 822, 823. The purpose of requiring chain of custody for exhibits is to prevent tampering, loss, substitution or mistake. *Arnold v. State* (1982), Ind., 436 N.E.2d 288, 291. The facts here present, at most, the possibility of tampering but no indication that such occurred rendering the exhibit inadmissible.

## V

Finally, Delatorre claims there was an insufficient chain of custody for State's Exhibit No. 19, the suspect kit, containing various body samples from Delatorre. Witness Lacey testified the only item she used from Exhibit No. 19 was a hair sample from Delatorre, which she used to make the comparative analysis previously referred to. She did not testify to any other item in Exhibit No. 19, the suspect kit, nor did any other witness. Delatorre objected to the admission of Exhibit No. 19 on the grounds that no proper foundation had been laid for its admission since there was no testimony concerning blood samples, analysis of blood or any other items taken for testing. He claimed the lack of this testimony rendered the presentation of Exhibit No. 19 into evidence premature. He did not inquire of witness Lacey about the existence or whereabouts of blood samples. His claim on appeal is that since there was nothing to indicate blood samples were in the kit when Lacey examined it, there is evidence the chain was broken.

A similar claim was made in *Arnold v. State* (1982), Ind., 436 N.E.2d 288, 291. Arnold's objection, among other things, was that the doctor witness testifying in regard to a rape kit did not give testimony concerning the contents of the kit or what,

if any, connection he had with the contents. This Court held in *Arnold* that the absence of testimony by the physician as to the contents of the kit does not in any way affect the chain of custody claim. We further observed that the defense did not avail itself of the opportunity to probe the issue of the authenticity of the exhibit by delving into questions of identity and authenticity through cross-examination of the doctor. The same can be said of Delatorre in the instant case. Although there was evidence through another witness that a blood sample was taken from Delatorre in the emergency room, there was no evidence it was placed in the suspect kit for analysis. It could reasonably be presumed the reason for this is that no seminal fluid or blood was found on the victim. No error is demonstrated on this issue.

The trial court is affirmed.

SHEPARD, C.J., and GIVAN and DICKSON, JJ., concur.

DeBRULER, J., concurs, with separate opinion.

DeBRULER, Justice, concurring.

According to statute, I.C. 35-42-4-1, the crime of rape can be a Class A felony if it is committed by threatening the use of deadly force. Here the verbal part of the threat was "I am going to tie you up and I have a knife." There was also a physical part to the threat. The man grabbed her, they struggled, something was thrown over her head, and she was thrown to the floor. The intruder had a strong and painful hold around her neck as he spoke. When the two parts are considered together, I agree that there is sufficient evidence of the element of threat of deadly force. I continue to be convinced, however, that a threat to use deadly force manifested only by words would not be sufficient evidence of such element. *See Bazile v. State* (1989), Ind., 540 N.E.2d 49, 50-51 (DeBruler, J., dissenting).