Byron Keith MORSE, Appellant,

v.

STATE of Indiana, Appellee.

No. 82S00–9107–CR–517.

Supreme Court of Indiana.

June 11, 1992.

Rehearing Denied Sept. 9, 1992.

Thomas L. Montgomery, Evansville, for appellant.

Linley E. Pearson, Atty. Gen., Richard C. Webster, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in a finding of guilty of Dealing in Cocaine Within 1,000 Feet of School Property, a Class A felony, and guilty of Dealing in a Narcotic Drug, a Class B felony. Appellant also was found to be a habitual offender. On the first count, appellant was sentenced to thirty (30) years enhanced by thirty (30) years by reason of his status of habitual offender, and on the second count, he was sentenced to ten (10) years, the sentences to run concurrently.

The facts are: Evidence shows that appellant, together with Jeffery Fingers, sold both cocaine and Dilaudid to an undercover police officer and his confidential informant. The cocaine transaction was completed within 1,000 feet of school property owned by the Evansville–Vanderburgh School Corporation.

Appellant contends the trial court committed reversible error by not requiring the State to give racially neutral reasons for its peremptory strike of the only prospective juror who was a member of appellant's race. Appellant relies on the United States Supreme Court's decision in *Batson v. Kentucky* (1986), 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 to support his position.

In *Batson, supra,* the United States Supreme Court held that the Equal Protection Clause forbids prosecutors from challenging potential veniremen solely on the basis of their race. A defendant must make a *prima facie* showing of purposeful discrimination on the part of the prosecu-

tion through the exercise of those peremptory challenges. The defendant must show: 1.) that he is a member of a cognizable racial group; 2.) that the prosecutor has peremptorily challenged members of his race; and 3.) that these facts and any other relevant circumstances raise an inference that the prosecutor purposefully excluded veniremen from the jury because of their race. *Id.; Shields v. State* (1988), Ind., 523 N.E.2d 411.

■ If the defendant makes a *prima facie* showing, purposeful discrimination will be presumed unless the prosecutor presents a neutral explanation for his exercise of peremptory challenges. *Stamps v. State* (1987), Ind., 515 N.E.2d 507. The prosecutor's explanation should relate to the case at bar but does not have to amount to justification of a challenge for cause. *Id.*

The facts pertaining to this issue in the present case are very similar to the facts in *Shields, supra.* In *Shields,* the appellant sought a new trial because the State peremptorily struck the only potential black juror from the panel. Shields argued that because the record contained no reason for striking that juror, he had raised an inference of purposeful discrimination. He argued that upon that showing the burden then shifted to the State to provide a neutral explanation for the peremptory strike.

We stated that peremptory challenges are challenges made without stating a reason therefor, without inquiry, and not subject to the court's control. *Id.* We stated that a party is not required to explain its use of those kinds of challenges, and that there is a strong presumption that the prosecution uses its challenges to obtain a fair and impartial jury. *Id.*

We then held that Shields had not made a *prima facie* showing of purposeful discrimination; therefore, the State was not required to explain its reason for striking the juror, and reversible error did not occur. Shields was able to show that he was black and the potential venireman was black, but Shields failed to produce any other evidence to indicate an improper use of the peremptory challenge.

In *Stamps v. State* (1987), Ind., 515 N.E.2d 507, the State used peremptory challenges to strike two black veniremen from the jury. Stamps sought a new trial on the grounds that the prosecution had engaged in purposeful discrimination through its use of peremptory challenges. The State argued that it would not be appropriate for the potential jurors to serve on the jury, and that the reasons did not include the race of the veniremen. *Id.* We held that the defendant did not make a *prima facie* showing of purposeful discrimination on the part of the State. We stated that while Stamps had shown that he was black and that the potential veniremen were black, he had not produced evidence which demonstrated an improper use of the challenges. We went on to comment that had Stamps made his *prima facie* showing, the State's response would have been inadequate to rebut the presumption of purposeful discrimination.

■ In the present case, the trial court found that appellant failed to make a *prima facie* showing of purposeful discrimination. Appellant showed that he was black and that the potential venireman was black, but provided no other evidence to support his argument that the State had engaged in an exclusion of potential jurors based on race. Therefore, he did not require the State to provide a neutral explanation for the use of the challenge, because the burden of proof had not shifted to the State, and the presumption that the prosecution used its peremptory challenges to obtain a fair and impartial jury remained intact. *Thorne v. State* (1988), Ind., 519 N.E.2d 566 and *Phillips v. State* (1986), Ind., 496 N.E.2d 87.

■ Appellant contends there is insufficient evidence to support the jury verdict. He claims there is an insufficient chain of custody from the time the undercover police officer purchased the drugs until they were analyzed by the police laboratory. The record in this case does not support appellant's claim in this regard.

The undercover police officer described in detail how he received the drugs from

appellant, how they were packaged, and that they remained in his possession until they first were sealed at police headquarters and then turned over to the police laboratory. The laboratory technician testified in what manner he received the drugs and how they were returned to the department. The undercover officer also testified how he retrieved the drugs for the purpose of bringing them to court and that they were in the same condition in a container as when they had been left at the department.

■ Appellant claims that shortly after the cocaine purchase, the officer left the car for a brief period while his confidential informant remained in the car. He contends this caused a hiatus in the chain. We have stated that the chain of custody rule is to ensure that during the time the evidence is in the possession of the law enforcement authorities, there is not a substitution or alteration of the evidence. *Woods v. State* (1989), Ind., 547 N.E.2d 772, *cert. denied*, — U.S. —, 111 S.Ct. 2911, 115 L.Ed.2d 1074; *Delatorre v. State* (1989), Ind., 544 N.E.2d 1379. Although the State is required to maintain a chain of custody, it is not required to negate every remote possibility of tampering. *Hensley v. State* (1986), Ind., 489 N.E.2d 62.

In the case at bar, the officer and his confidential informant were working in concert to effect the arrest which occurred. The remote possibility that the confidential informant would have tampered in any way with the drug in question is not sufficient to demonstrate an interruption in the chain of custody. The trial court did not err in admitting the cocaine in evidence.

■ Although the issue is not raised in appellant's brief prepared by counsel, appellant did file a motion *pro se* to challenge the constitutionality of the statute, Ind. Code § 35-48-4-2, which raises the sale of drugs within 1,000 feet of school property to a Class A felony. He states that the statute would be unconstitutional unless it required that children be present at the time the transaction occurred.

■ Although we do not entertain *pro se* pleadings when counsel is involved in a case, the constitutionality of a statute may be raised at any stage of the proceeding including raising the issue *sua sponte* by this Court. We therefore examine the statute and find no merit to appellant's claim. One must presume the legislature understood that school premises are often occupied even when school is not in session and that school grounds are often gathering places for neighborhood children. The legislature was justified in engaging in such a presumption and not requiring the difficult proof as to whether children were actually present at the time a drug transaction occurred. We find the statute to be constitutional.

The trial court is affirmed.

SHEPARD, C.J., and DICKSON, J., concur.

DeBRULER, J., dissents with separate opinion in which KRAHULIK, J., concurs.

DeBRULER, Justice, dissenting.

The majority opinion takes the wrong tack in light of this Court's crucial recent opinions in *Love v. State* (1988), Ind., 519 N.E.2d 563 and *Thorne v. State* (1988), Ind., 519 N.E.2d 566, and commits federal constitutional error. The decision in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), wrote the word "systematic" out of equal protection law as it is applied to challenges to the prosecutor's use of peremptory challenges for racial purposes. A prima facie showing of purposeful discrimination is all that is required to cast the burden on the State to give its neutral grounds. The pattern of strikes at the trial or the voir dire examination at the trial may suffice to raise this initial, necessary inference of purposeful discrimination.

Here the prosecutor removed the lone black member of the venire. As in *Thorne v. State, supra,* the action of the prosecutor left an all white venire. Appellant is black. The voir dire examination by the prosecutor and defense counsel is bland and benign. The black prospective juror responded that he would be willing to convict if the State met its burden. He had no

previous record, no prior jury service, he was never a victim of a crime, nor was any member of his family ever charged or convicted of a crime. On this state of the record, the inference of purposeful discrimination is present. I would remand for a *Love* hearing to permit the State to present legitimate grounds for its challenge, and failing that, to order a new trial.

KRAHULIK, J., concurs.