## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 26 2015, 10:00 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Lisa M. Johnson
Brownsburg, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Brian Reitz
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

|  |  |
|---|---|
| Eugene Bowers, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | March 26, 2015 <br><br> Court of Appeals Case No. 49A02-1408-CR-537 <br><br> Appeal from the Marion Superior Court. <br> The Honorable Wayne A. Sturtevant, Special Judge. <br> Cause No. 49F24-1211-FD-79190 |

**Barteau, Senior Judge**

# Statement of the Case

Eugene Bowers appeals after a jury trial from his conviction of one count of intimidation[1] as a Class D felony, contending that numerous errors at trial necessitate the reversal of his conviction. We affirm.

# Issues

*Sua sponte*, we address the following issue:

> I.   Whether the trial court had in personam jurisdiction over Bowers and subject matter jurisdiction of the case.

We restate the issues presented by Bowers as follows:

> II.   Whether Indiana Code section 35-45-2-1 is unconstitutionally vague as applied to Bowers.
>
> III.   Whether sufficient evidence supports Bowers's conviction.
>
> IV.   Whether the trial court committed instructional error by rejecting Bowers's tendered instruction on actual malice.

# Facts and Procedural History

Bowers appeared before Magistrate Judge Amy J. Barbar ("the Magistrate") in a post-conviction proceeding over which the Magistrate presided approximately seven or eight years prior to the summer of 2012. The Magistrate ultimately ruled against Bowers. Between the time of the ruling and the summer of 2012, the Magistrate had no personal interaction with Bowers, never sought a loan

---

[1] Ind. Code § 35-45-2-1 (2006).

from him, never entered into a contract with him, never was party to a lawsuit brought by Bowers, and never had a judgment entered against her in favor of Bowers.

On June 14, 2012, however, Bowers, who was incarcerated, attempted to file a lien against the real and personal property of the Magistrate in the amount of $10,500,000. The lien was based on Bowers's claim that the Magistrate had "violat[ed] her 'oath' to uphold the Constitution of these United States of America." State's Ex. 4 p. 1 (underlining omitted). Bowers specifically contended that the Magistrate violated her oath by denying his petition for writ of habeas corpus. State's Ex. 5 pp. 2-3. The type of property specified in the lien was as follows:

> F) This lien shall encompass all real property, personal property, real estate, motor vehicle registered with the Bureau of Motor Vehicles, any trucks, cars, vans, atv's [sic], three wheelers, trics [sic], any and all vehicles with an engine, (combustible), rv's [sic], motor homes, or the like. Any houses, and currently the house Amy J. Barbar, former Amy J. Barnes, resides in, any rental property, whether in the State of Indiana or any other State, whether jointly owned by a spouse, children, business partners/associates for the enjoyment of income considered revenue, whether it be taxable or non-profit. Any stocks, bonds, IRA's, pention [sic] plan portfolio, pention [sic] funds, jointly owned or identified in maiden name, (Amy J. Barnes), any revenues from stocks, or bonds, or IRA's or investments that has occurred in dividend since August 20, 2005. Any of the property mentioned up above including 50% of salary, (existing salary) any bonuses from the position of judge given by the legislature/and or government irregardless [sic] of what agency shall a lien be placed upon and/or seized until the full amount of

said lien is paid in full for the damages suffered by the complainant for the wrong-doer, (Amy J. Barbar, formerly Amy J. Barnes) . . .

State's Ex. 4, pp. 3-4. The lien additionally cited to "UCC 1-207." *Id.* at 4 (section on performance or acceptance under reservation of rights).

[6] Bowers had the lien notarized and then filed it with the Marion County Recorder's Office, which does not verify documents before recording them, and does not confirm that such money is actually owed. Without a verification process, anyone can file a lien against anyone else, assuming that the document meets the recording requirements. Bowers's lien was not recorded because it did not meet the recording requirements and the recording fee had not been paid. The Marion County Recorder's Office returned the lien to Bowers and also sent a rejection letter.

[7] On July 7, 2012, Bowers sent another notarized lien for $10,500,000 against the Magistrate's property to the Marion County Recorder's Office. This lien, too, was not recorded because it did not meet the recording requirements and the recording fee had not been paid.

[8] Next, Bowers sent another notarized document, a "NOTICE AND DEMAND," to the Marion County Recorder's Office, in which Bowers made similar legal and factual assertions against the Magistrate. State's Ex. 6. Danielle Westerfield, the Marion County Recorder's Office manager at the time the documents were submitted, testified at trial that if any of the documents

Bowers submitted had been recorded, they would have appeared as a lien against the Magistrate's property in a public records search.

[9] The Marion County Recorder's Office staff forwarded the documents to the Magistrate. In the fall of 2012, the Magistrate was contacted by the Marion County Prosecutor's Office about the liens. The Magistrate became aware at that point that Bowers had actually attempted to file the liens. She was concerned because "it was filing something that would affect my personal life . . . ." Tr. p. 203. The Magistrate testified at Bowers's trial that she was unaware that the recorder's office would even file-stamp documents such as Bowers's. After learning this, the Magistrate asked the prosecutor's office staff to pursue the matter.

[10] The State charged Bowers with one count of intimidation, alleging in pertinent part as follows:

> . . . attempted to file liens on [the Magistrate's] personal and real property, with the intent that [the Magistrate] be placed in fear of retaliation for the prior lawful act, that is: presiding over post-conviction proceedings in the case of *State of Indiana v. Eugene Bowers*, #49G02-008PC-149750 [sic].

Appellant's App. p. 17. Bowers lodged a pre-trial motion to dismiss the case on the grounds that the prosecution was based on his exercise of protected free speech and that the State had not alleged and could not prove actual malice. The trial court denied the motion, agreeing with the State that the prosecution was based on Bowers's action of attempting to file the lien. Since the

prosecution did not involve protected free speech, in the trial court's opinion, Bowers's tendered instruction on actual malice was also rejected.

[11] Bowers's jury trial began on June 18, 2014 and concluded the next day. The trial court granted the State's motion to dismiss the habitual offender charge against Bowers. The jury found Bowers guilty of intimidation as a Class D felony. The trial court later sentenced Bowers to a term of three years executed for the conviction. Bowers now appeals.

# Discussion and Decision

## I. Jurisdiction

[12] We raise this issue *sua sponte* at the outset because Bowers actively challenged the trial court's subject matter jurisdiction and personal jurisdiction over him. "[I]t is the duty of the reviewing court to raise and determine the issue [of subject matter jurisdiction] *sua sponte* if not raised by the parties." *Gorman v. Northeastern REMC*, 594 N.E.2d 843, 844 (Ind. Ct. App. 1992), *trans. denied*. Throughout the proceedings, Bowers denied that he was the individual named in the charges, claimed that he did not pronounce his name the way the trial court did, and, in an effort to preserve the personal jurisdictional challenge, referred to himself as "a sovereign natural born person, flesh and blood, political power holder" and "not a legislative[ly] creat[ed] person." Appellant's App. p. 69. Bowers at one point insisted that the trial court refer to him as "Sovereign Natural Born Person" in order to preserve his challenge based on mistaken identity. Tr. p. 4. He further contended that the trial court had no

subject matter jurisdiction over him because the trial court was "an Article 1 Court" and "[t]he only courts that are applicable to [him] are Article 3 Justice Courts of law." *Id*. at 13.

[13] Our standard of review regarding personal jurisdiction is as follows:

> It is axiomatic that an Indiana court must have personal jurisdiction over a defendant in order to render a valid personal judgment against that defendant. A party challenging the court's personal jurisdiction must prove its challenge by a preponderance of the evidence unless lack of jurisdiction is apparent on the face of the complaint. We have said the decision to grant a motion to dismiss based on lack of in personam jurisdiction lies within the trial court's sound discretion. As with any fact-finding entrusted to the trial court, it is within the trial court's sound discretion to decide the jurisdictional facts. Once the court has decided those facts, however, whether *in personam* jurisdiction exists is a question of law.

*Freemond v. Somma*, 611 N.E.2d 684, 687 (Ind. Ct. App. 1993), *reh'g denied*, (internal citations omitted) *trans. denied*.

[14] Here, the record shows that in the probable cause affidavit setting forth the factual basis for the charges, Marion County Sheriff's Sergeant Carmen M. Bodine affirmed that she reviewed Bowers's Marion County court file and discovered in the file copies of the first lien Bowers attempted to record against the Magistrate and the notice and demand he had sent. Sergeant Bodine further affirmed that she and another detective interviewed Bowers at the Wabash Valley Correctional Facility in Carlisle, Indiana. Bowers declined to answer any of their questions.

[15] Additionally, the State filed a motion to transport Bowers to Marion County for his initial hearing on the charges. The trial court's transport order commanded the Marion County Sheriff's Department to produce Bowers, who was "now confined at the Wabash Valley Correctional Facility" to Marion County Superior Court for his hearing. Appellant's App. p. 27. At that hearing, after Bowers made his initial challenge to the trial court's jurisdiction, the trial court stated for the record that the charging information had been presented to the person "who I believe is Eugene B. Bowers, the person who is in front of me" who was indicating that she was mispronouncing the name she had spelled for the record from the charging information. *Id.* at 76.

[16] Later, at trial, Beverly Gilmore, a notary public, testified that she had known Bowers for approximately five and one-half years and identified him in court. Gilmore further testified that she notarized documents for Bowers in the summer of 2012. She identified the documents including State's Exhibit 5, purporting to be a lien against the Magistrate, in which a response to the lien was requested to be sent within forty-five days to "Eugene Bowers, P.O. Box 1111, Carlisle, Indiana 47838." Exhibit Volume p. 30.

[17] Based upon the record before us, we are satisfied that in personam jurisdiction existed over Bowers.

[18] Next, we address the issue of subject matter jurisdiction. "[S]ubject matter jurisdiction entails a determination of whether a court has jurisdiction over the general class of actions to which a particular case belongs." *K.S. v. State*, 849

N.E.2d 538, 542 (Ind. 2006). The criminal charge filed against Bowers in Marion County Superior Court was a Class D felony. According to the Marion County Local Rules of Court, the Marion Superior Court had jurisdiction over Bowers's case. *See generally,* LR49-CR2.2-100 *et seq*. We are satisfied that the trial court had subject matter jurisdiction over Bowers's case.

## II. Vagueness Claim

[19] Bowers contends that the intimidation statute is unconstitutionally vague as applied to him. He claims that the statute violates his rights under the Fifth and Fourteenth Amendments to the United States Constitution and article 1, sections 12and 13 of the Indiana Constitution because it does not give a person of ordinary intelligence fair notice that recording or attempting to record a lien is prohibited conduct.

[20] We first observe that while Bowers moved to dismiss the charges against him on constitutional grounds, his challenge did not include the argument that the statute was unconstitutionally vague as applied to him. Although the Supreme Court's opinion in *Morse v. State*, 593 N.E.2d 194, 197 (Ind. 1992), states without citation to authority that "the constitutionality of a statute may be raised at any stage of the proceeding including raising the issue *sua sponte* by this Court," a challenge that a statute is unconstitutionally vague must be raised prior to trial in a timely motion to dismiss or the claim is waived. *Rhinehardt v. State*, 477 N.E.2d 89, 93 (Ind. 1985). Waiver notwithstanding, we address Bowers's claim.

[21]    The standard of review of challenges to the constitutionality of a statute is as

follows:

> When reviewing a challenge to the constitutionality of a statute,
> we observe a high level of deference to the legislature's decision-
> making. The statute or regulation is presumed to be
> constitutional "until clearly overcome by a contrary showing."
> The challenging party bears the considerable burden of proving
> this contrary showing, and any doubts are resolved against that
> challenge.

*Fry v. State*, 990 N.E.2d 429, 434 (Ind. 2013) (internal citations omitted).

Further, "[a] constitutional challenge to a statute is reviewed de novo." *Morgan*

*v. State*, 22 N.E.3d 570, 573 (Ind. 2014).

[22]    A criminal statute, like the one challenged here, can be found

unconstitutionally vague as follows: (1) for failing to provide notice enabling

ordinary people to understand the conduct that it prohibits or (2) for the

possibility that it authorizes or encourages arbitrary or discriminatory

enforcement. *Id.* Still, where a statute has two reasonable interpretations, one

constitutional and the other not, a court on appellate review will choose the

interpretation that will uphold the constitutionality of the statute. *Id.* at 573-74.

[23]    The statutory definition of "threat" pertinent to the crime of intimidation as

charged in this case is as follows:

> (c) "Threat" means an expression, by words or action, of an
> intention to:
>
> . . . .

(7) falsely harm the credit or business reputation of the person threatened[.]

Ind. Code § 35-45-2-1(c)(7). Clearly, the statute contemplates that some actions constitute a threat, and courts on review have analyzed whether certain conduct or actions constitute a threat. *See e.g.*, *Ajabu v. State*, 677 N.E.2d 1035 (Ind. Ct. App. 1997) (statute does not limit means utilized to convey threat, so threats made through media were communicated to victims), *trans. denied*; *Gaddis v. State*, 680 N.E.2d 860 (Ind. Ct. App. 1997) (display but no pointing of licensed handgun to another motorist not a communication of threat).

[24] "Whether a communication is a threat is an objective question for the trier of fact." *Ajabu*, 677 N.E.2d at 1041. With respect to the statutory phrase "communicates a threat to another person" we have stated as follows:

> The text of the intimidation statute does not limit the phrase "communicates a threat to another person" to only those threats made directly to or in the presence of the threatened party. The word communicate is not modified in any way. The word "communicate" encompasses those threats made known or transmitted to another person, and the statute does not limit the means utilized to convey the threat. Such threats include those a person makes known to the victim through the print, radio or television media with the requisite intent.

*Id.* at 1042.

[25] "The statute need only inform the individual of the generally proscribed conduct; it need not list with exactitude each item of prohibited conduct." *Baumgartner v. State*, 891 N.E.2d 1131, 1136 (Ind. Ct. App. 2008). "[A] statute is void for vagueness only if it is vague as applied to the precise circumstances

of the present case." *Id.* "The defendant is not at liberty to devise hypothetical situations which might demonstrate vagueness." *Id.*

[26] Although Bowers contends that he believed that he was entitled to redress from what he believed was an erroneous decision by the Magistrate, the method he used to obtain relief was inappropriate. "Because intent is a mental function, it must be determined from a consideration of the defendant's conduct and the natural and usual consequences of such conduct, absent an admission from the defendant." *Hendrix v. State*, 615 N.E.2d 483, 485 (Ind. Ct. App. 1993). "To determine whether the defendant intended to commit the conduct, the trier of fact must usually resort to reasonable inferences based upon an examination of the surrounding circumstances." *Id.*

[27] The intimidation statute, for purposes of the charges alleged here, states that a threat is a communication by words or actions of an intent to falsely harm the credit or business reputation of the person threatened. A person of ordinary intelligence would comprehend the statute adequately to understand that multiple attempts to record a lien, which is a public record, in the amount of $10,500,000 on the property of a magistrate, who had denied the person's request for post-conviction relief, without having a judgment against the magistrate in that amount, is proscribed conduct. Application of the intimidation statute to Bowers's conduct is not unconstitutionally vague.

# III. Sufficiency of the Evidence

[28] Bowers argues that the evidence is not sufficient to support his conviction. In order to establish that Bowers committed intimidation as a Class D felony, the State was required to prove beyond a reasonable doubt that Bowers communicated a threat to the Magistrate, who was a judge or an employee of the Marion Superior Court, with the intent that the Magistrate be placed in fear of retaliation—falsely harming the Magistrate's credit or business reputation, for a prior lawful act—presiding over the hearing on his petition for post-conviction relief. Ind. Code § 35-45-2-1(b)(1)(B)(ii), (vi). More particularly, Bowers contends that there is no evidence that he communicated a threat by attempting to record the lien against the Magistrate, and there is no evidence that he intended to place the Magistrate in fear.

[29] "When reviewing a claim of insufficiency, we will not reweigh the evidence or judge the credibility of witnesses." *Hendrix*, 615 N.E.2d at 484. "We will consider the evidence which supports the verdict and the reasonable inferences to be drawn therfrom; if there is substantial evidence of probative value to support the verdict, it will be affirmed." *Id.*

[30] "In Indiana, a 'lien' is a claim which a person holds on another's property as a security for an indebtedness or charge. Where there is no debt, however, in the absence of law, a lien cannot exist." *Countrywide Home Loans, Inc. v. Holland*, 993 N.E.2d 184, 194 (Ind. Ct. App. 2013) (quoting *Terpstra v. Farmers & Merchs. Bank*, 483 N.E.2d 749, 755 (Ind. Ct. App. 1985)). Here, Bowers claimed an

entitlement to damages from the Magistrate for his allegedly unlawful incarceration resulting from her denial of the post-conviction relief he sought. That claim for damages, however, was never reduced to a judgment. Nonetheless, Bowers attempted to record the liens, which are part of the public record, to encumber the majority, if not all, of the Magistrate's property.

[31] As mentioned above, in the absence of an admission by the defendant, intent must be determined from a consideration of the defendant's conduct and the natural and usual consequences of that conduct. *Hendrix*, 615 N.E.2d at 485. Here, one can reasonably infer that Bowers intended to place the Magistrate in fear of retaliation for her prior adverse ruling on Bowers's claim for post-conviction relief when Bowers attempted on multiple occasions to record a lien in the amount of $10,500,000 against her property. Upon discovering that the recorder's office does not verify the accuracy of the documents submitted in support of a lien, the Magistrate understandably was placed in fear that her personal credit could be jeopardized by such a large lien, which is a public record capable of being discovered by anyone, filed against her property.

[32] Bowers specifically alleged in the liens he attempted to file that his claim against the Magistrate was based on the adverse ruling, which he deemed unlawful. Bowers was aware of the defect in his attempts to record the liens— nonpayment of the recording fee. Therefore, his recording attempts were a continuing means to threaten the Magistrate for her prior lawful conduct. Bowers's arguments otherwise amount to an invitation for this Court to reweigh

the evidence. This we will not do. *Id.* at 484. There was sufficient evidence that Bowers committed intimidation as a Class D felony.

## IV. Instructional Error

[33] Bowers argues that the trial court committed reversible error by rejecting his tendered instruction on actual malice. Our standard of review of the issue is as follows:

> When reviewing a trial court's decision to give or refuse to give a party's tendered instruction, we consider "(1) whether the tendered instruction correctly states the law; (2) whether there was evidence presented at trial to support giving the instruction; and, (3) whether the substance of the instruction was covered by other instructions that were given." The trial court has broad discretion as to how to instruct the jury, and we generally review that discretion only for abuse.

*Kane v. State*, 976 N.E.2d 1228, 1230-31 (Ind. 2012) (internal citations omitted).

[34] Here, the issue centers on part two—whether the evidence presented at trial supported giving the instruction. Bowers specifically contends that our Supreme Court's decision in *Brewington v. State*, 7 N.E.3d 946 (Ind. 2014), compels us to reverse his conviction due to this instructional error because the allegations against him involve a public figure, the Magistrate, and involve threatened harm to the Magistrate's credit or business reputation, which he claims is subject to the actual malice standard for speech about public officials. We disagree.

[35]   In *Brewington*, a "disgruntled divorce litigant dissatisfied with a child-custody evaluator's recommendation . . . waged an obsessive years-long campaign" against the child-custody evaluator and the judge who presided over the matter. 7 N.E.3d at 955-56. A grand jury indicted the defendant of intimidation and attempted obstruction of justice based on intimidation through defendant's communications about the judge and child-custody evaluator. The Supreme Court granted transfer in order to address the free speech arguments as they related to the defendant's attacks on the victims' reputations and true threats to their safety.

[36]   The Supreme Court stated as follows about subparts (c)(6) and (7) of the intimidation statute:

> . . . . subpart (c)(6) parallels the classic common-law definition of defamation, and (c)(7) reflects a particular type of defamation. . . . Subparts (c)(6) and (7), then, essentially criminalize defamation by including it in the definition of a punishable "threat." The same constitutional free-speech protections that apply in civil defamation cases therefore must also apply to prosecutions under (c)(6) and (7).

*Id.* at 958-59.

[37]   Here, by contrast, the State repeatedly acknowledged Bowers's fundamental right to free speech about the Magistrate and argued that the prosecution was not based upon Bowers's statements expressing his belief that the Magistrate had reached the incorrect decision in his case and in the process had denied his constitutional rights. Instead, the prosecution was based on Bowers's attempts to record a lien against the Magistrate's personal property. If the lien was

successfully filed, a public-records search would reflect the $10,500,000 lien against the Magistrate's property, which would have a negative impact on the Magistrate's personal finances. The prosecution was not based on defamatory communications with respect to the Magistrate's credit or business reputation so the free-speech analysis from *Brewington* is inapplicable here. As a consequence, the actual malice standard was not required and the trial court correctly rejected the tendered instruction.

## Conclusion

[38] In light of the foregoing, we affirm the decision of the trial court.

[39] Affirmed.

Baker, J., and Kirsch, J., concur.