Donnell **CURRIN**, Jr., Appellant
(Defendant below),

v.

**STATE** of Indiana, Appellee
(Plaintiff below).

No. 45S05–9608–CR–535.

Supreme Court of Indiana.

Aug. 7, 1996.

---

8. *Lewis,* 424 N.E.2d at 111.

Mark A. Bates, Crown Point, for Appellant.

Pamela Carter, Attorney General of Indiana, Jodi Kathryn Rowe, Deputy Attorney General, Indianapolis, for Appellee.

## ON PETITION TO TRANSFER

SULLIVAN, Justice.

Defendant Donell Currin, Jr., was convicted in Lake Superior Court of Robbery as a Class A felony.[1] A divided panel of the Court of Appeals affirmed. *Currin v. State,* 638 N.E.2d 1319 (Ind.Ct.App.1994). Seeking transfer, Defendant contends that it was reversible error for the trial court to deny defendant the exercise of a peremptory challenge to a prospective juror.

During *voir dire,* the trial court imposed upon both the prosecution and defense parties a requirement that, in order to exercise a peremptory challenge, the party attempting the challenge must give to the court a race, ethnic, religious, sex-neutral reason for the challenge. Thus, when defendant attempted to exercise a peremptory challenge to strike a certain member of the venire, the trial court demanded a race-neutral explanation

even though the prosecution did not object to the defense's attempt to use the peremptory challenge. The trial court found defense counsel's explanation inadequate and refused to excuse the juror.

Defendant now asks for a new trial on grounds that it was reversible error for the trial court *sua sponte* to object to or question the exercise of a peremptory challenge.

### *Discussion*

■ We address the identical issues in *Williams v. State,* 669 N.E.2d 1372 (Ind. 1996), also decided today.[2] In both *Williams* and this case, we do not find that it constituted reversible error for the trial court to require each side to present a race-neutral justification for each of its peremptory challenges. *Williams,* 669 N.E.2d at 1379.

■ We now turn to whether Currin in fact proffered a sufficiently race neutral justification to warrant exclusion of the challenged juror. As in *Williams,* before we will find that the trial court erred in rejecting a peremptory challenge, we must be able to conclude that defense counsel's neutral explanation was a sufficiently clear and reasonably specific explanation of counsel's legitimate reasons for exercising the challenge that it overcomes the great deference due the trial court's fact finding. *Williams,* 669 N.E.2d at 1380.

During the unrecorded *voir dire* of the trial that ended with the defendant's conviction for Robbery as a Class A felony,[3] defendant, who is an African–American, peremptorily challenged the sole African–American under immediate consideration for the jury. The trial court denied the challenge. The defense moved for a mistrial based on the trial court's denial of the challenge. The trial court denied the mistrial motion. Upon discharge of the jury, the court and counsel agreed to reconstruct a record of the unrecorded *voir dire* because there was confusion as to the trial court's reason for disallowing

---

1. Ind.Code § 35–42–5–1 (1993).

2. In fact, *Williams* involves the same trial court employing the same procedures.

3. Ind.Code § 35–42–5–1 (1993).

defendant's peremptory strike. The following exchange occurred:

Court: We probably ought to make a record here by agreement, while our memories are fresh on this challenge. The defense peremptory challenge to Mr. Moody, who was the only black juror on the venire.[4] There's been a motion filed by the defendant indicating that I had not indicated anything about why I had refused his peremptory challenge, that is absolutely wrong. He was the only black on the panel and I expressly stated that and if that didn't make the record, that we were doing it at sidebar, that is the reason why I refused to [sic] challenge. On the face of it he is entitled to be challenged for a nonracial reason. What the cases on appeal seem to overlook is that black defendants strike black jurors as readily as they do whites. Automatically assume that racial reason means it has to be of the opposite race and that's absolutely not true. Experienced defense counsel strike mature blacks, if they have a black defendant for a client, more readily than they would strike anyone else.

Defense: I don't know about that.

Court: That is the basis for the Court's determination that the original reason for the peremptory, since he was the only black on the jury, was for racial reasons, thus creating a necessity for the defendant to express a nonracial reason for striking, which is, or was—

Defense: His comments about his prior jury service his feelings about that, his characterization of the opposing jurors and a mistrial as being looking for excuses. Then asked again about that he said he thought those other jurors—well,

the position he attributed to the opposite or opposing jurors was, they felt the defendant was guilty but there wasn't enough evidence, which I felt to be a, certainly not looking for excuses.

Court: Well, it was a euphemism for not wanting him because he is a mature black.

Defense: I disagree absolutely with that last—you're reading the Court—that's the Court's assessment.

Court: That was my fact finding.

Defense: Here is my from memory of the sequence. I struck or attempted to strike on the first pass three jurors.

Court: Oh, Kubik, Marco and Moody, right.

Defense: Correct. And the way I tendered them to the Court and I still have my sheet was Mr. Moody was the last one. And the court, I do recall and agree with the court that at one point it said something like, you probably know this better than I do, but he's the only male black on the jury—

Court: No. He's the only black on the panel.

Defense: Right. Only black on the panel.

Court: And then I looked out there for the rest of the venire and we weren't going to get another black for another ten, fifteen people.

Defense: The court did say that, but it did not say that until it had already, particularly with Kubik or the other two, it started out in terms of the sequence of things, the court started out by asking me for reasons for the peremptories before we even got to Mr. Moody, let alone the—when we got to Mr. Moody, at some point the court did say that, that is correct.

**4.** The record reveals that Mr. Moody was the only African–American under immediate consideration for the jury. There were other African–Americans in the venire.

Court: And the reason why I'm now asking for reasons for everybody, it's up in the air as to who's covered by Batson and who isn't. It looks to me like everybody is covered by Batson, everybody. So, everybody gets the right not to be struck for an improper reason.

Defense: As long as we're here, does the Court agree with me that it did inquire of my reasons for striking?

Court: All three.

Defense: All three.

Court: I agree.

Defense: Okay.

State: And the one potential strike the state tried to make.

Defense: Right.

Court: Yes, you too. Fears proved unfounded again, Miss Severtson [the prosecutor].

Defense: I think we've got a record. I think the appellate issue is the sufficiency of the explanation as opposed to the inquiry itself. But we do have some consensus here as to how it proceeded.

Court: Okay. Memories, any other memories that you'd like to share?

State: Well, Judge, I don't know if you want us to rehash the argument that we made at the bench, but it was my recollection that this seated juror said that he merely disagreed with the position taken.

Court: It was a hung jury. There was a confession in the case. He thought people were looking for excuses to acquit. I think that was the way he put it.

Defense: At one point, yes.

Court: Yeah. And, you know, those are the kinds of normal disagreements that occur with every jury that can't come to a decision. It doesn't make them susceptible of being challenged for that reason, just because he happened to be on the—which side was he on, by the way?

Defense: It was obvious he was for guilty.

State: For the guilty side.

Court: I don't think it was ever, but if you want to say that, I wouldn't disagree.

Defense: Well, if the other side was looking for reasons to acquit—

State: Logic dictates.

Court: It makes him on the guilt side.

Defense: Yeah.

As the foregoing dialog indicates, defendant's proffered race neutral explanation for the peremptory strike of the juror in question was that that juror had previously served on a criminal jury, had voted for conviction, and had been frustrated by that jury's inability to reach a verdict. We find that defense counsel has presented a sufficiently clear and reasonably specific explanation of counsel's legitimate reasons for exercising the peremptory challenge that it overcomes the great deference due the trial court's fact finding. In reaching this determination, we are aided by the decisions of other appellate courts which have found prior jury service to be a sufficiently race-neutral explanation to overcome a prima facie showing of racial discrimination under *Batson.* See *United States v. Rudas,* 905 F.2d 38, 41 (2d Cir.1990); *United States v. Ruiz,* 894 F.2d 501, 506 (2d Cir.1990); *State v. Walker,* 650 So.2d 363, 366 (La.App.1995); *People v. Richie,* 217 A.D.2d 84, 86, 89, 635 N.Y.S.2d 263, 264, 267 (1995); *Webb v. State,* 840 S.W.2d 543, 545 (Tex.App.1992); *Ivatury v. State,* 792 S.W.2d 845, 848 (Tex. App.1990); *Levy v. State,* 749 S.W.2d 176, 178 (Tex.App.1988); *State v. Wright,* 78 Wash.App. 93, 104, 896 P.2d 713, 720 (1995). *But see People v. Wiley,* 165 Ill.2d 259, 277–78, 209 Ill.Dec. 261, 269, 651 N.E.2d 189, 197 (1995) (prior service on jury alone not sufficient to justify peremptory challenge). We conclude that the trial court committed reversible error by failing to grant defendant's peremptory strike of the juror in question.

■ Finally, we note as we did in *Williams* that in the future, trial courts may not *sua sponte* require each side to present a

race-neutral justification for each of its peremptory challenges absent extraordinary circumstances. *Williams,* 669 N.E.2d at 1382.

### Conclusion

We grant transfer, vacate the judgment and opinion of the Court of Appeals, and reverse the judgment of the trial court.

SHEPARD, C.J., and DeBRULER, DICKSON and SELBY, JJ., concur.