Byron K. MORSE, Petitioner–
Appellant,

v.

Craig HANKS, Respondent–Appellee.

No. 97–3608.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 14, 1999.

Decided March 31, 1999.

William E. Marsh (argued), Indiana Federal Community Defenders, Inc., Indianapolis, IN, for Petitioner–Appellant.

Andrew L. Hedges (argued), Office of the Attorney General, Indianapolis, IN, for Respondent–Appellee.

Before BAUER, ROVNER, and EVANS, Circuit Judges.

EVANS, Circuit Judge.

An Indiana state court jury found Byron K. Morse guilty of selling cocaine within 1000 feet of a school. He was also found to be an habitual offender. His appeal to this court raises a simple question under *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the well-known decision regarding the use of peremptory challenges directed at minorities.

Morse is black. The pool from which his jury was selected included one black—Louis Dillard. When the prosecutor used one of his nine peremptory challenges to remove Dillard from the pool, Morse's attorney was quick to act. He asked the prosecutor to explain on the record his reason for striking Dillard. The trial judge refused to order the prosecutor to give an explanation. After the jury voted to convict Morse he took an appeal to the Indiana Supreme Court, where one of his issues was a claim that a *Batson* violation occurred.

The Indiana Supreme Court affirmed Morse's conviction, albeit by a split decision. *See Morse v. State,* 593 N.E.2d 194 (Ind.1992). On the first page of his appellate brief in this court, Morse's counsel tells us that "[t]wo members of the Indiana Supreme Court dissented on the grounds that the prosecutor had violated *Batson v. Kentucky* when he used a peremptory challenge to remove the only African-American member of the venire." Not so. The Indiana dissenters did not find a *Batson* violation. They did, however, believe that a fuller record was necessary, and if they had had their way the case would have been remanded for a hearing "to permit the State to present legitimate grounds for its challenge." *Id.,* 593 N.E.2d at 198.

Morse filed a federal habeas petition pursuant to 28 U.S.C. § 2254. Once in federal court, the astute district judge, John D. Tinder, did what the dissenting Indiana justices advocated. Discovery was taken, and the Indiana prosecutor's deposition was taken and made a part of the record. In that deposition the prosecutor testified that he did not strike Dillard from the jury pool because of his race. Although the prosecutor could "not exactly" remember[1] why Dillard was struck, he testified that he generally preferred older jurors in drug cases and he thought (correctly) that Dillard was only 23 years old at the time. The prosecutor also offered that he may have struck Dillard so that a nurse a little further down in the jury pool would move up the line and thus increase her chances of making the final roster. He did this, he said, because he liked having nurses as jurors in drug cases for "they understand chain of custody, they understand controlled substances." Finally, the prosecutor testified that he placed a question mark next to Dillard's name (and the names of three others) on the jury list (indicating a possible peremptory challenge candidate) even before he saw Dillard and knew that he was black. This was done, he explained, after he reviewed written juror questionnaire forms filled out

---

1. This is understandable. The prosecutor's testimony came 6 years after the fact. Had he offered perfect recall of the event, that would have raised an eyebrow or two.

at least several days before the case was called for trial. The questionnaire made no reference to Dillard's race, and in striking him the prosecutor said he was being consistent with his general practice of not "going against my question mark annotation." On this record, Judge Tinder believed that Dillard was struck for race-neutral reasons. Morse's petition was thus denied and this appeal followed.

The analytical steps which should be followed in reviewing a *Batson* claim are quite clear. First, the defendant must establish a prima facie case of purposeful discrimination, which requires a showing "(1) that he [or she] was a member of a cognizable racial group; (2) that the prosecutor exercised peremptory challenges to remove persons of the defendant's race from the venire; and (3) that there were sufficient facts and circumstances to raise an inference that the prosecution utilized the peremptories to exclude members from the venire on the basis of race." *Holder v. Welborn*, 60 F.3d 383, 388–89 (7th Cir. 1995) (citing *Batson*, 476 U.S. at 96, 106 S.Ct. 1712, 90 L.Ed.2d 69). If the defendant succeeds in clearing this preliminary hurdle, "the burden shifts to the government to articulate race-neutral justifications for striking" the venirepersons in question. *Holder*, 60 F.3d at 389 (citing *Batson*, 476 U.S. at 94, 106 S.Ct. 1712, 90 L.Ed.2d 69). The government's explanation at this stage "need not rise to the level justifying exercise of a challenge for cause," but it must provide legitimate reasons that are "clear and reasonably specific" and "related to the particular case to be tried." *Cf. Batson*, 476 U.S. at 97–98 & n. 20, 106 S.Ct. 1712, 90 L.Ed.2d 69 (internal quotations omitted). Finally, if the government meets its burden, the trial court has the responsibility of determining if the defendant has indeed established purposeful discrimination. *See Coulter v. Gilmore*, 155 F.3d 912 (7th Cir.1998).

We review the issue presented in this case under pre-AEDPA (the Anti-Terrorism and Effective Death Penalty Act of 1996, codified at 28 U.S.C. § 2254) law because Morse filed his federal petition before April 24, 1996. *Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). Viewed from that perspective, we think the Indiana courts were wrong to hold that Morse had not made out a prima facie case under *Batson*. A prima facie case of purposeful discrimination can be established where the prosecution uses a peremptory challenge to strike the only black venireman in the panel. *See United States v. Horsley*, 864 F.2d 1543, 1546 (11th Cir.1989). And when the voir dire is as perfunctory as this one was—the potential jurors were asked little more than whether they would treat both sides equally—a prima facie case is established. It might be different, we think, if the excused black juror had given an answer that would expose a clear basis for the state to want to remove him from the pool with a peremptory challenge. But that didn't happen here, and the Indiana trial judge, on the basis of this record, should have enforced Morse's request that the prosecutor tell why Dillard was given the hook. But now that misstep presents nothing more than a no-harm, no-foul situation because the prosecutor gave his reasons during the proceedings in the district court conducted by Judge Tinder.

So what we are left with is an assessment of credibility. Judge Tinder found the prosecutor to be credible when he said Dillard was not rejected because of his race. Morse offers nothing more than different interpretations of what the prosecutor said. We cannot, however, chalk Morse's points up to anything more than conjecture. As we have observed,

> When in response to a *Batson* challenge the prosecutor gives a race-neutral reason that persuades the judge, there is no basis for reversal on appeal unless the reason given is completely outlandish or there is other evidence which demonstrates its falsity.

*United States v. Stafford*, 136 F.3d 1109, 1114 (7th Cir.1998). Neither condition is satisfied here. The judgment of the district court is affirmed.