Madonna **ASHABRANER,** Appellant
(**Plaintiff below**),

v.

Gary W. **BOWERS** and **Rumpke of
Indiana–Shelbyville, Inc.,** Appellees
(**Defendants below**).

No. 49S02–0010–CV–00603.

Supreme Court of Indiana.

Aug. 30, 2001.

Nathaniel Lee, Robert A. Burns, Lee, Burns, & Cossell, LLP, Indianapolis, IN, Attorneys for Appellant.

Edward R. Hannon, Hannon Centers Roop & Hutton, Indianapolis, IN, Attorney for Appellees.

**ON PETITION TO TRANSFER**

SULLIVAN, Justice.

Plaintiff Madonna Ashabraner sued defendant Gary Bowers and his employer, Rumpke of Indiana–Shelbyville, Inc., after a collision between her car and their garbage truck. Ashabraner appeals a jury verdict in favor of Bowers and Rumpke on grounds that the trial court violated *Batson v. Kentucky* by allowing Bowers and Rumpke to remove an African–American woman from the jury pool without requiring any race neutral justification in the

face of a prima facie case of discrimination. We agree and reverse the judgment of the trial court.

## Background

This case arises out of a collision between a garbage truck and a small automobile. On November 19, 1992, Plaintiff Madonna Ashabraner was driving north on Arlington Avenue in Indianapolis. Her compact car trailed a garbage truck driven by defendant Gary Bowers and owned by defendant Rumpke of Indiana–Shelbyville (collectively referred to as "Bowers"). Both vehicles were in the far right lane of the four-lane road. Bowers slowed the truck because he knew that he had to make a right turn into a narrow driveway owned by a customer. Before Bowers attempted the turn, he pulled the truck into the left lane. The parties contest exactly how far left the truck strayed. Ashabraner testified that she believed Bowers was changing lanes and continued in the right lane in order to pass the truck. Bowers testified that he turned on his right turn signal and then straddled the lanes in order to make the right turn. He said that he did so in order to avoid lumbering the truck over the curb of the driveway. As Bowers turned into the driveway, the truck collided with Ashabraner's car.

Ashabraner sued Bowers for negligence. The jury returned a verdict in favor of Bowers. Ashabraner appealed, claiming that Bowers used a racially-based peremptory challenge, an expert witness was not qualified, and the trial court erred in regard to two instructions. The Court of Appeals affirmed in an unpublished memo-

randum opinion. *See Ashabraner v. Bowers*, No. 49A02–9905–CV–330, 725 N.E.2d 167 (Ind.Ct.App. March 15, 2000). We granted transfer.

## Discussion

Ashabraner seeks a new trial because she contends that Bowers used a racially-based peremptory challenge in violation of *Batson v. Kentucky*, which prohibits racial discrimination in the exercise of such challenges. 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). *See also Wright v. State*, 690 N.E.2d 1098, 1104–05 (Ind.1997), *reh'g denied.* While that proposition sounds simple on its face, *Batson* recognized that parties would have difficulty proving discriminatory intent because of the discretionary (and often opaque) nature of such challenges.[1] In response, the Court established a two-step burden-shifting procedure. *See Batson*, 476 U.S. at 93–96, 106 S.Ct. 1712. First, the party objecting to the peremptory challenge must set out a prima facie case of discrimination. To meet this requirement, the party contesting the challenge must show that:

(1) the juror is a member of a cognizable racial group; (2) [the challenging party] has exercised peremptory challenges to remove that group's members from the jury; and (3) the facts and circumstances of this case raise an inference that the exclusion was based on race.

*Wright*, 690 N.E.2d at 1104–05 (citing *Batson*, 476 U.S. at 96, 106 S.Ct. 1712). If the moving party makes out a prima facie

---

1. *See, e.g.,* Julian Abele Cook, Jr., & Tracey Denise Weaver, *Closing Their Eyes to the Constitution: The Declining Role of the Supreme Court in the Protection of Civil Rights,* 1996 Det. C. L.Rev. 541, 555 (1996) ("[T]he Supreme Court in *McDonnell Douglas* and *Batson*, recognizing that invidious discrimination is difficult to prove, set forth the prima facie case as a mechanism by which plaintiffs could prove discrimination indirectly.") (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) (creating similar burden-shifting test for proof of discrimination under federal employment statutes)).

case, the burden shifts to the challenging party to "come forward with a neutral explanation for [the challenge]." *See Batson*, 476 U.S. at 97, 106 S.Ct. 1712.[2] The party's "explanation need not rise to the level justifying exercise of a challenge for cause." *Id.* Instead, "[i]f the explanation, on its face, is based on something other than race, the explanation will be deemed race neutral." *McCants v. State*, 686 N.E.2d 1281, 1284 (Ind.1997).[3]

■ Our experience is that the typical *Batson* claim turns on the sufficiency of a proffered race neutral explanation for exclusion of the juror.[4] Here, however, the trial court and the Court of Appeals did not reach that step because they resolved the issue by finding no prima facie case. During jury selection, Ashabraner object-ed to Bowers's peremptory challenge of a juror.[5] To make out a prima facie case of racial discrimination, Ashabraner told the trial court that:

> [The juror] was an African American. [D]uring the course of the voir dire, [she] gave what appeared to be the most neutral possible answers.[6] She appeared to be intelligent. She appeared to be attentive and she answered all the questions that were posed to her by [ ] counsel. The only reason that he could have used the peremptory challenge is basically because of this person's race.

(R. at 180.) In her motion to correct errors and on appeal, Ashabraner noted that the juror was the only member of the venire who was black.[7] Bowers's counsel argued in reply that

2. While the burden of production shifts to the party exercising the challenge, the overall burden to prove discriminatory use of peremptory challenges remains on the party who objected to the challenge. *See Purkett v. Elem*, 514 U.S. 765, 768, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) (per curiam).

3. As Cook and Weaver point out, this framework mirrors the prima facie case/pretext analysis under *McDonnell Douglas. See supra* note 1.

4. *See, e.g., Wright v. State*, 690 N.E.2d 1098, 1104 (Ind.1998); *Lee v. State*, 689 N.E.2d 435, 440 (Ind.1997); *Kent v. State*, 675 N.E.2d 332, 339 (Ind.1996); *Currin v. State*, 669 N.E.2d 976, 979 (Ind.1996); *Chubb v. State*, 640 N.E.2d 44, 50 (Ind.1994); *cf. Williams v. State*, 700 N.E.2d 784, 787 (Ind.1998) (failure to establish prima facie case).

5. The record is sparse as to what actually occurred during jury selection because the voir dire does not appear in the record. Moreover, the record contains several juror questionnaires, but not the one answered by the juror in question. Instead, the parties rely on a transcript of an argument that occurred just before the trial started. The record also contains Ashabraner's motion to correct errors and Bowers's response to it, both of which discuss the *Batson* issue. Bowers

does not argue that Ashabraner's *Batson* claim cannot be reviewed on this record.

6. Again, the actual voir dire answers are not in the record. *See supra* note 3.

7. Bowers argues on appeal that we should not consider the fact that the juror was the only black member of the venire because Ashabraner did not mention this fact before the trial court. (Appellee's Br. at 8 n. 2.) The Court of Appeals accepted this argument and refused to consider the juror's status as the only black member of the venire. *See* Memorandum Opinion at 4 n. 2. However, Bowers made frequent mention of this fact in his response to Ashabraner's motion to correct errors (R. at 48–51) and in his appellate brief. *See* Appellee's Br. at 7. We conclude that Bowers has conceded that the juror was the only black member of the venire. Indeed, while Bowers asks us to ignore facts that Ashabraner did not mention during argument before the trial court, he asserts a race neutral reason for the challenge that he did not raise until his response to Ashabraner's motion to correct errors. *See* Appellee's Br. at 10 ("What was not said at trial, for strategically obvious reasons, but was stated in [Bowers's] Response in Opposition to Plaintiff's Motion to Correct Errors ... was that the person seated in the 14th seat was a third

I did not strike [the juror] because of race. I struck [the juror] because of the way I saw the jury panel being made up. And ... this is a situation where [the juror] may be African American.... I don't [see] race as being an issue one way or another in this case. And ... it didn't play into the decision in ... any way. There wasn't a single panel member, Your Honor, who didn't give positive responses to both sides on all questions.... [R]ace didn't enter into it and ... how do you defend this. How do you defend this argument? ... [A]ll I can say is ... there was nothing inappropriate with using that peremptory strike in this case.

(R. at 180–81.) The trial court overruled Ashabraner's objection by stating: "I think the case puts the Court in an untenable position and peremptory challenges can be utilized for any reason." (R. at 182.)

■ This colloquy demonstrates that the trial court did not adhere fully to the principles enunciated in *Batson* and subsequent cases. Specifically, the trial court refused to analyze Ashabraner's objection to the peremptory challenge, indicating that the court did not follow *Batson* even though it applies to civil cases. *See Edmonson v. Leesville Concrete Co.,* 500 U.S. 614, 616, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991). *Edmonson* held that a trial court

is so intertwined with jury selection that its imprimatur is placed on any peremptory challenges that it allows. *See id.* at 624, 111 S.Ct. 2077. This interconnection makes racially-based peremptory challenges a form of state action susceptible to federal constitutional analysis even if the state is not a party to the litigation. *See, e.g., id.* ("As we have outlined here, a private party could not exercise its peremptory challenges absent the overt, significant assistance of the court."). Because *Batson* applies to civil cases, the trial court was clearly wrong to conclude that "peremptory challenges can be utilized for any reason." (R. at 182.)

■ We also note that Bowers argued in the trial court that the peremptory challenge was permissible because the juror was not the same race as Ashabraner. This argument misapplies *Batson.* Trial courts must employ the *Batson* methodology regardless of the race of the parties. *See Powers v. Ohio,* 499 U.S. 400, 416, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), *Wright v. State,* 690 N.E.2d 1098, 1104 (Ind.1997), *Willoughby v. State,* 660 N.E.2d 570, 578 (Ind.1996). This result obtains because under *Batson* a race-based peremptory challenge violates not only the equal protection rights of the adverse *party,* but those of the *juror* as well. *See Powers,* 499 U.S. at 415, 111 S.Ct. 1364.[8] *Batson*

year law student who could be valuable to [Bowers] in addressing proximate cause issues....").

8. As the *Batson* Court noted:

[B]y denying a person participation in jury service on account of his race, the State unconstitutionally discriminate[s] against the excluded juror. [Moreover, the] harm from discriminatory jury selection extends beyond that inflicted on the defendant and the excluded juror to touch the entire community. Selection procedures that purposefully exclude black persons from juries undermine public confidence in the fairness

of our system of justice. Discrimination within the judicial system is most pernicious because it is "a stimulant to that race prejudice which is an impediment to securing to [black citizens] that equal justice which the law aims to secure to all others." *Batson,* 476 U.S. at 88, 106 S.Ct. 1712 (quoting *Strauder v. West Virginia,* 100 U.S. 303, 308, 25 L.Ed. 664 (1879) (citations omitted), *abrogated by Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975)). *Edmonson* resolved in the positive the question of whether a civil litigant had standing to assert the rights of the juror. 500 U.S. at 628–29, 111 S.Ct. 2077.

therefore prevents parties from using racially-based peremptory challenges regardless of the race of the opposing party. *See Williams v. State,* 669 N.E.2d 1372, 1377 (Ind.1996), *cert. denied,* 520 U.S. 1232, 117 S.Ct. 1828, 137 L.Ed.2d 1034 (1997) ("While *Batson* itself appeared to be based upon the right of the criminal defendant to a trial free of racial taint, the doctrine has evolved into one designed to protect the right of the prospective juror to serve.")

The Court of Appeals did not rely on the misunderstandings of the trial court, but applied *Batson* and concluded that the circumstances surrounding the peremptory challenge did not demonstrate a prima facie case of discrimination. We hold that this conclusion was error.

■ Three factors must be established before a party makes out a prima facie case under *Batson.* The first two—that the juror was a member of a cognizable group and that the party removed jurors of this group—are not at issue. The heart of Ashabraner's *Batson* claim is the third factor—whether "the facts and any other relevant circumstances of the defendant's case raise an inference that [a party] used [challenges] to exclude venirepersons from the jury due to their race." *Bradley v. State,* 649 N.E.2d 100, 105 (Ind.1995) *reh'g denied.* The record shows that Bowers removed the only black member of the venire. We have held that this fact alone establishes a prima facie case, *see McCants v. State,* 686 N.E.2d 1281, 1284 (Ind.1997), and, at a minimum, it is evidence of discrimination that must weigh in the balance.

■ Ashabraner also asserts that the juror gave "neutral" answers that were similar to answers given by other panel members who were not removed. Appellant's Br. at 8, 14.[9] Bowers does not contest Ashabraner's assertion that the juror gave neutral answers to questions during voir dire and in the jury questionnaire, although the record does not reflect what those answers were. Appellee's Br. at 6–12. This evidence, coupled with the juror's status as the only black member of the panel, suffices to establish Ashabraner's prima facie case.[10] *See* 50A C.J.S. § 452 at 488 ("The challenger's questions and statements during voir dire examination and in exercising challenges may support or refute an inference of discriminatory purpose."); Henry M. Greenberg, *Criminal Procedure,* 44 Syracuse L.Rev. 189, 226 (1993) ("[T]here is no single litmus test for determining when a prima facie case of discriminatory intent has been established; There are no fixed rules for determining what evidence will give rise to an inference

9. Bowers conceded as much during argument before the trial court: "There wasn't a single panel member, Your Honor, who didn't give positive responses to both sides on all questions." (R. at 181.)

10. Taking this approach responds to Justice Marshall's concern that the prima facie case requirement would leave parties "free to discriminate against blacks in jury selection provided that they hold that discrimination to an 'acceptable' level." *Batson,* 476 U.S. at 105, 106 S.Ct. 1712 (Marshall, J., concurring). *Cf.* Henry M. Greenberg, *Criminal Procedure,* 44 Syracuse L.Rev. 189, 226 (1993) ("[W]hen a *Batson* objection has been made, [the object-

ing party] is entitled to the benefit of the proposition that peremptory challenges permit those inclined to discriminate to do so."). By finding that a party has established a prima facie case where the only minority juror gave "neutral" answers to jury selection questions but was removed anyway, we recognize that there may be unconstitutional discrimination where the venire contained a single or a small number of minority jurors. We believe it appropriate that trial courts make a *Batson* investigation into potential discrimination in such circumstances. *See infra* note 11.

sufficient to establish a case of discrimination.")[11] While the case is close, Ashabraner put forth sufficient facts to require Bowers to provide a race neutral reason for the challenge.[12] The trial court and the Court of Appeals did not reach the issue of whether Bowers could offer a race neutral explanation. Because the trial court applied the wrong standard and the Court of Appeals held that Ashabraner had not made out a prima facie case, we reverse and remand for a new trial.[13]

### Conclusion

Having granted transfer, thereby vacating the decision of the Court of Appeals, Ind. Appellate Rule 11(B)(3),[14] we now reverse the judgment of the trial court and remand for a new trial.

11. *See also* Cheryl A.C. Brown, Comment, *Challenging the Challenge: Twelve Years After* Batson, *Courts Are Still Struggling to Fill in the Gaps Left By the Supreme Court*, 28 U. Balt. L.Rev. 379, 403–04 (1999) ("[T]he third requirement has been subjected to a number of interpretations. An inference of discriminatory intent has been drawn from various circumstances. For example, courts have considered whether the challenged juror shares membership in a cognizable group with a defendant, victim, witness, or attorney involved in the case. Courts have also considered the type and level of voir dire questioning and the juror's responses. Challenges that remove all members of a cognizable group have been deemed improper.").

12. This conclusion recognizes that the prima facie case only entitles the party raising a *Batson* objection to shift the burden of production. That is to say, the minimal evidence needed to support a prima facie case under *Batson* must be sufficient to warrant a limited inquiry into the challenging party's motivations behind a peremptory challenge. This investigation comes at the cost of the otherwise unconditional nature of peremptory challenges, but if parties exercising such challenges have followed constitutional mandates, their power to remove jurors will be protected by *Batson*'s second step and by the fact that the moving party retains the burden of proof to show that the challenge was racially-based.

BOEHM, J., and RUCKER, J., concur.

DICKSON, J., dissents with separate opinion in which SHEPARD, C.J., concurs.

DICKSON, Justice, dissenting.

The majority reverses on grounds that the trial court found no prima facie case of discriminatory intent and failed to require the party exercising the peremptory challenge to present a race neutral justification. I believe that the rationale and holding of the majority are contrary to United States Supreme Court authority in *Purkett v. Elem*, 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995), and *Hernandez v. New York*, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991).

Under the facts of this case, inquiry into whether the plaintiff established a prima

In this way, the prima facie case requirement—and our application of it—compromises the parties' competing needs only so much as is necessary to ensure that the constitution has not been violated. *See, e.g.*, Stephen R. Diprima, Note, *Selecting a Jury in Federal Criminal Trials After* Batson *and* McCollum, 95 Colum. L.Rev. 888, 904 (1995) ("[T]he consequence of a finding that a prima facie case has not been established is that the judge refuses to ask the challenged party for an explanation, despite the possibility that the challenged party will offer an explanation that reveals discriminatory intent.").

13. The Court of Appeals expressed no viewpoint as to whether Bowers's met the second step of the *Batson* test, which requires a racially neutral explanation for the strike. Because we have already vacated the judgment of the trial court for its failure to correctly analyze Ashabraner's prima facie *Batson* case, we similarly do not reach this second step. However, it is clear that bald statements such as "I did not strike [the juror] because of race. I struck [the juror] because of the way I saw the jury panel being made up" (R. at 180) do not present a sufficient justification under *Batson*.

14. Now App. R. 58(A).

facie case is moot. The trial court made its original ruling after hearing both the plaintiff's challenge and the defendants' explanation. The Supreme Court has explained that there are three steps to the resolution of a *Batson* charge:

> [O]nce the opponent of a peremptory challenge has made out a prima facie case of racial discrimination (step one), the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step two). If a race-neutral explanation is tendered, the trial court must then decide (step three) whether the opponent of the strike has proved purposeful racial discrimination.

*Purkett*, 514 U.S. at 767, 115 S.Ct. at 1770–71, 131 L.Ed.2d at 839. This three-step procedure "permits prompt rulings on objections to peremptory challenges without substantial disruption of the jury selection process." *Hernandez*, 500 U.S. at 358, 111 S.Ct. at 1865–66, 114 L.Ed.2d at 405. If the trial court rules that the party challenging the peremptory challenge has not made out a prima facie case, then no explanation is required of the proponent of the challenge. However, if the proponent of the challenge, without waiting for a ruling by the court, volunteers an explanation, and the trial court rules on the issue of discriminatory intent, then the "preliminary issue of whether [a party] had made a prima facie showing becomes moot." *Id.* at 359, 111 S.Ct. at 1866, 114 L.Ed.2d at 405; *see also Morse v. Hanks*, 172 F.3d 983, 985 (7th Cir.1999) (finding that when the State offered the reason for using peremptory challenge, trial court's misstep for failing to rule on prima facie case is a "no-harm, no-foul situation"). That is what happened here. Defense counsel proffered a purported race-neutral explanation prior to any ruling by the trial court as to whether the plaintiff had presented a prima facie case of discrimination. Thus, as in *Hernandez*, there is no trial or appellate issue as to whether the plaintiff presented a sufficient prima facie case. The fact that the defense interjected its reason for exercising the peremptory challenge undermines the majority's conclusion that the trial court failed to require one.

When the party exercising the peremptory challenge presents a purported race-neutral explanation, the only requirement is that the explanation be neutral; it need not be "persuasive, or even plausible." *Purkett*, 514 U.S. at 768, 115 S.Ct. at 1771, 131 L.Ed.2d at 839. "Unless a discriminatory intent is inherent in the [party]'s explanation, the reason offered will be deemed race neutral." *Hernandez*, 500 U.S. at 360, 111 S.Ct. at 1866, 114 L.Ed.2d at 406. The Supreme Court explains:

> It is not until the *third* step that the persuasiveness of the justification becomes relevant—the step in which the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination. [citations omitted.] At that stage, implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination. But to say that a trial judge *may choose to disbelieve* a silly or superstitious reason at step three is quite different from saying that a trial judge *must terminate* the inquiry at step two when the race-neutral reason is silly or superstitious. The latter violates the principle that the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike.

*Purkett*, 514 U.S. at 768, 115 S.Ct. at 1771, 131 L.Ed.2d at 839 (emphasis in original).

In addition to denying any discriminatory intent, the attorney for the defendants stated:

I went through the panel. I decided who I thought plaintiff would strike, and I saw her [sic] was left and I saw-uh-went through who I had available to me, and Ms. Brown was the last one-uh-before Mr. Watts that-uh-that I can to to [sic] make up the panel that I though would be the best for my situation and my client in this case.

Record at 181. Defense counsel's expressed reason for the peremptory challenge was strategic.[1] For purposes of step two of the analysis, there is no inherent discriminatory intent in the explanation provided by the defendants, and as stressed in *Purkett,* the credibility or persuasiveness of the explanation is not an issue. 514 U.S. at 768, 115 S.Ct. at 1771, 131 L.Ed.2d at 839.

In response to the defendants' proffer of a race-neutral explanation and in support of her objection to the defendants' peremptory challenge, the plaintiff argued to the trial court that the challenged juror was an African–American and that, because the juror's demeanor and answers were "neutral,"[2] the "only reason" the defendants "could have used the peremptory challenge is basically because of this person's race." Record at 180.

With the presentation of defendants' explanation for their peremptory challenge and the plaintiff's responding argument, the issue thereby proceeded to step three, in which the trial court must determine whether the party objecting to the peremptory challenge has carried the burden of proving purposeful discrimination. Credibility and persuasiveness of the explanation are appropriate considerations in step three. After plaintiff's argument, the trial court ruled: "I think the case puts the court in an untenable position and peremptory challenges can be utilized for any reason. I'll show the motion denied." Record at 182.[3]

1. In his memorandum in opposition to the plaintiff's motion to correct error, the defendants provided the following further explanation:

> What was not said, for strategically obvious reasons, was that the person seated in the 14th seat was a third year law student who, if made an alternate to the jury panel, could be valuable to the Defendants in addressing proximate cause issues which were critical to the damage evaluation in this case if the jury got to the damages issue. Record at 49.

2. The majority correctly notes that this Court has found a prima facie case established when one party exercises a peremptory challenge to strike the only prospective African–American that could have served on a jury. *McCants v. State,* 686 N.E.2d 1281, 1284–85 (Ind.1997). However, the majority's emphasis on the prospective juror's "neutral" answers is unfortunate. The neutrality of a prospective juror's answers, as well as his or her demeanor, is not a significant consideration in assessing the propriety of a peremptory challenge which by its nature is intended to permit the exclusion of jurors not subject to exclusion for cause. Many jurors properly excluded on peremptory challenges are likely to have presented "neutral" answers and demeanor, but are removed based upon the strategic and intuitive impressions and assessments by parties and counsel. The fact that a peremptorily challenged juror gave "neutral" answers therefore does not significantly distinguish the challenged juror from others who may be properly subject to peremptory challenge.

3. The majority infers that the trial court refused to apply *Batson* principles because this was a civil case. I disagree and read the trial court's comment merely to reflect its view that the plaintiff was presenting only minimal circumstances to support her objection and further to express the court's awareness of the important role of peremptory challenges. It should also be noted that, at the close of trial, the plaintiff filed a motion to correct errors that included a claim that the trial court erred in allowing the defendants to exercise the peremptory challenge over objection without offering a race-neutral explanation other than "strategy." Record at 25. Both plaintiff and

Under step three, many factors are available for a trial judge's consideration. A judge may consider the mix of other selected jurors, their backgrounds, personalities, etc. The judge would be aware of the issues and witnesses expected to come before the court, and may have had available the questionnaires completed by the summoned prospective jurors. Furthermore, the judge may have had prior trial experience with the parties' counsel including their past practices and strategies. It is from the totality of circumstances, many of which are not reflected in an appellate record, that a trial judge must decide in step three whether the opponent of the peremptory challenge has proved purposeful racial discrimination.

The breadth of this evaluation underscores the wisdom of the requirement that such trial court determinations be "accorded great deference" on appeal. *McCants v. State*, 686 N.E.2d 1281, 1284 (Ind.1997); *Williams v. State*, 669 N.E.2d 1372, 1379 (Ind.1996) (*quoting Hernandez v. New York*, 500 U.S. at 364, 111 S.Ct. at 1868–69, 114 L.Ed.2d at 409); *see also Batson v. Kentucky*, 476 U.S. 79, 98 n. 21, 106 S.Ct. 1712, 1724 n. 21, 90 L.Ed.2d 69, 88–89 n. 21 (1986) (trial court's finding "largely will turn on evaluation of credibility [and should be given] great deference."); *Kent v. State*, 675 N.E.2d 332, 339–40 (Ind.1996)

(trial court's determination of *Batson* challenge is reviewed deferentially under the clearly erroneous standard); *Morse*, 172 F.3d at 985 ("When in response to a *Batson* challenge the prosecutor gives a race-neutral reason that persuades the judge, there is no basis for reversal on appeal unless the reason given is completely outlandish or there is evidence which demonstrates its falsity."). Judge Easterbrook has similarly explained:

> *Batson* requires the judge to determine whether a race-neutral reason offered for a challenge is honest, and district judges are much better situated than appellate judges to evaluate the honesty of the lawyers who practice in district court. In the end, although the jury selection raises substantial questions about the conduct and candor of the prosecutor who selected this jury, the district judge's decision that the explanation was honest must be accepted.

*United States v. Roberts*, 163 F.3d 998, 1000 (7th Cir.1998).

This three step trial methodology and deferential appellate review represents a thoughtful and cautious balance of the interests in preventing racial discrimination in the jury selection process and preserving the peremptory challenge as a vital component of our jury trial system.[4] Per-

defendants submitted memoranda in support of their respective positions. The plaintiff pointed out in her memorandum, Record at 31–32, and the defendants do not dispute, that a *Batson* challenge may be made in a civil case. The defendants admitted in their memorandum that the plaintiff made a "timely *Batson* objection...." Record at 53. While the basis of the trial court's ruling during trial voir dire may be somewhat imprecise, its later ruling denying the motion to correct error follows the parties' agreement that a Batson objection does apply to peremptory challenges in civil cases, thus indicating that the trial court did not misunderstand the application of *Batson* to civil trials.

4. Describing the historical nature and rationale for the peremptory challenge, William Blackstone explained:

> In criminal cases, or at least in capital ones, there is *in favorem vitæ*, allowed to the prisoner an arbitrary and capricious species of challenge to a certain number of jurors, without showing any cause at all; which is called a *preemptory* challenge; a provision full of that tenderness and humanity to prisoners, for which our English laws are justly famous. This is grounded on two reasons: 1. As every one must be sensible, what sudden impressions and unaccountable prejudices we are apt to conceive upon the bare looks and gestures

emptory challenges traditionally have been viewed as one means of assuring the selection of a qualified and unbiased jury. *Batson,* 476 U.S. at 91, 106 S.Ct. at 1720, 90 L.Ed.2d at 84. By permitting parties to exercise even a limited number of peremptory challenges, our system of justice acknowledges that one person may perceive from another's eye-contact, affect, demeanor, and other ever-so-subtle body language—perhaps cognizable only at an intuitive level—reliable information regarding the prospective juror's probable personal resistance or hostility, openness to the evidence, or other factors relevant to the juror's suitability. Even if these sub-cognitive perceptions may occasionally be inaccurate as to the prospective juror's actual attitude and fairness, they remain an extremely important element in assuring a party's trust and confidence that the jury about to decide the case is one that is fair and unbiased. This trust and confidence of the parties in the jury is a crucial component of the justice system and of our citizens' willingness to forgo self-help and to entrust strangers to determine their personal interests and precious concerns.

If the trial court had sustained the plaintiff's objection to the defendants' peremptory challenge by finding that the plaintiff had proven purposeful racial discrimination, such a determination, deferentially reviewed, would require affirmance. Likewise, here, where the trial court heard argument of both counsel and was in a unique position to assess the totality of circumstances and then denied the objection and permitted the peremptory challenge, we should accord great deference to the judge's decision, as required by the decisions of this Court and the United States Supreme Court. I believe that the trial court should be affirmed.

SHEPARD, C.J., concurs.

of another; and how necessary it is that a prisoner (when put to defend his life) should have a good opinion of his jury, the want of which might totally disconcert him; the law wills not that he should be tried to any one man against whom he has conceived a prejudice even without being able to assign a reason for such his dislike. 2. Because, upon challenges for cause shown, if the reason assigned prove insufficient to set aside the juror, perhaps the bare questioning his indifference may sometimes provoke a resentment; to prevent all ill consequences from which, the prisoner is still at liberty, if he pleases, peremptorily to set him aside.
*Lewis v. United States,* 146 U.S. 370, 376, 13 S.Ct. 136, 138, 36 L.Ed. 1011, 1014 (1892) (quoting 4 WILLIAM BLACKSTONE, COMMENTARIES 353).