

FILED

Mar 24 2016, 9:06 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Neil L. Weisman
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Christina D. Pace
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Carlos Villaruel,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | March 24, 2016<br><br>Court of Appeals Cause No.<br>71A03-1506-CR-544<br><br>Appeal from the St. Joseph<br>Superior Court<br><br>The Honorable John M.<br>Marnocha, Judge<br><br>Trial Court Cause No.<br>71D02-1404-FD-255 |

**Barnes, Judge.**

## Case Summary

[1]     Carlos Villaruel appeals his convictions for Class D felony intimidation and

Class A misdemeanor battery.  We reverse and remand.

# Issues

The restated issues are:

I.  whether the trial court erred by failing to analyze Villaruel's *Batson* objection; and

II.  Whether the evidence is sufficient to support Villaruel's conviction for intimidation and allow him to be retried on that charge.

# Facts

On April 3, 2014, Officers Jeffrey Cummins and Timothy Cichowicz of the South Bend Police Department responded to a 911 call from Shayla Swank. When the officers arrived, they encountered Swank, who was crying and had a bloody lip and a mark next to her eye. Villaruel later admitted that he hit Swank. Officer Cichowicz escorted Swank to Villaruel's residence, where the incident between Villaruel and Swank took place. Officer Cichowicz knocked on the door, and Villaruel invited the officers into his residence. Officer Cichowicz observed Villaruel "had been drinking a little bit, but nothing major." Tr. p. 119. He was calm and "able to function and understand [the officers]." *Id.* at 119, 156. Officer Cummins noted Villaruel slurred his words, smelled of alcohol, and had glassy eyes. *See id* at 182.

The officers arrested Villaruel, and Officer Cummins placed him in handcuffs and transported him to the St. Joseph County Jail. During the ride to the jail, Villaruel "progressively got more belligerent" and called Officer Cummins names. *Id.* at 160. "He told me repeatedly that he was going to kick me in the balls . . . Then as I was pulling up to the jail, that's when he started telling me

he was going to kill me." *Id.* at 161. "Then he started saying that he makes deliveries and if he sees me, he'll remember my face. If he sees my face again, he'll put out my face, he would kill me. He would remember my face and put out your [sic] lights." *Id.* Villaruel testified he did not remember making some of the foregoing statements to Officer Cummins but admitted he threatened to kill him. *See id.* at 241-43. While Officer Cummins and Villaruel were in the jail vestibule, Villaruel continued to threaten Officer Cummins. He said the Spanish word for "gun" and repeatedly said he was going to kill Officer Cummins. *Id.* at 162-63.

[5] While waiting in the jail's vestibule, there was an altercation, and Villaruel was injured. Officer Cummins transported him to the hospital for treatment. On the way to the hospital, "he threatened [Officer Cummins's] family then. He talked about how he worked landscaping and he would see them sometime and pretty much kill my family before me." *Id.* at 168.

[6] The State charged Villaruel with Class D felony intimidation and Class A misdemeanor domestic battery. On July 23, 2014, the State added a third charge—resisting law enforcement, a Class A misdemeanor. That same date, Villaruel pled guilty to domestic battery and resisting law enforcement, but he withdrew his plea on September 24, 2014. On April 15, 2015, the State amended the language of Count I and amended Count II so that it charged Villaruel with Class A misdemeanor battery.

Villaruel's jury trial was held on April 27, 2015. During jury selection, the State moved to strike for cause the only Hispanic venireperson, Ms. V., from the panel. The State ultimately used a peremptory strike on Ms. V., and Villaruel objected citing *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712 (1986). The trial court allowed the strike after stating, "There is no *Batson* issue for Hispanics." Tr. p. 77. The jury found Villaruel guilty of Counts I and II.[1] On May 12, 2015, the trial court sentenced Villaruel to an aggregate sentence of two and one-half years in the Department of Correction. Villaruel now appeals.

# Analysis

### I. Batson claim

Villaruel first argues the trial court erred by overruling his *Batson* objection. It is well-settled that using a peremptory challenge to strike a potential juror solely on the basis of race violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. *Jeter v. State*, 888 N.E.2d 1257, 1262 (Ind. 2008) (citing *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712 (1986)), *cert. denied*. The constitutional interests at stake in *Batson* "'are not limited to the rights possessed by the defendant on trial, nor to those citizens who desire to participate in the administration of the law, as jurors,' but extend to the entire community . . . ." *United States v. Stephens*, 421 F.3d 503, 510 (7th Cir.

---

[1] It appears the State dismissed the resisting law enforcement charge, but it is not clear when. Nonetheless, Villaruel was tried only on the charges of intimidation and battery.

2005) (quoting *Johnson v. California*, 545 U.S. 162, 171-72, 125 S. Ct. 2410, 2418 (2005)), *cert. denied*.

[9] *Batson* adopted a procedure for "ferreting out discrimination in the exercise of peremptory challenges." *Davis v. Ayala*, __ U.S. __, 135 S. Ct. 2187, 2208 (2015).

> First, the party contesting the peremptory challenge must make a prima facie showing of discrimination on the basis of race. Second, after the contesting party makes a prima facie showing of discrimination, the burden shifts to the party exercising its peremptory challenge to present a race-neutral explanation for using the challenge. Third, if a race-neutral explanation is proffered, the trial court must then decide whether the challenger has carried its burden of proving purposeful discrimination.

*Killebrew v. State*, 925 N.E.2d 399, 401 (Ind. Ct. App. 2010) (citation omitted), *trans. denied*.

> [T]his procedure places great responsibility in the hands of the trial judge, who is in the best position to determine whether a peremptory challenge is based on an impermissible factor.  This is a difficult determination because of the nature of peremptory challenges:  They are often based on subtle impressions and intangible factors.

*Davis*, 135 S. Ct. at 2208.  "[T]he trial court's decision as to whether a peremptory challenge was discriminatory is given 'great deference' on appeal and will be set aside only if found to be clearly erroneous." *Collier v. State*, 959 N.E.2d 326, 329 (Ind. Ct. App. 2011) (quoting *Killebrew*, 925 N.E.2d at 401).

The following is the conversation related to striking Ms. V.:

THE COURT: As far as cause challenges are concerned, State has moved to strike number 13 for cause, Ms. [V.]

What's the reason for that?

[THE STATE]: Your Honor, we believe because of the timing, and if we go into tomorrow, we have a concern.

THE COURT: It will be done today.

[THE STATE]: Okay.

THE COURT: So do you want her for cause or not?

[THE STATE]: If it will be done today, then I would use her as a peremptory.

THE COURT: You want to use her with a peremptory?

[THE STATE]: Yes.

THE COURT: Okay.

[THE DEFENSE]: May I respond with regard to Ms. [V]?

I mean, I guess my concern … I would raise a *Batson* issue.

THE COURT: There is no *Batson* issue for Hispanics, it's only race and gender. That's what the Supreme Court has determined . . . .

[DEFENSE COUNSEL]: Your Honor, I believe my issue is that she's the sole juror on the panel that is or what appears to be Hispanic.

THE COURT: That's not a suspect class under the Constitution. And so it doesn't rise to a *Batson* issue . . . you could say the same about anybody that has any other national origin. It does not rise to that level.

As far as I know, the U.S. Supreme Court has determined . . . and I don't think there is any Indiana cases on point, but that is essentially the old suspect class designation from the '60's, '70's and '80's that dealt with race, white or black; gender, male or female.

Okay?

So we're not there yet . . . .

Tr. pp. 77-78 (first and third ellipses in original).

[11] We observe that "[s]ince the *Batson* decision prohibiting race-based peremptory challenges, the United States Supreme Court has added challenges based upon ethnicity . . . . In *Hernandez* [*v. New York*], the challenge was made to Latino jurors, and the Supreme Court analyzed the discriminatory aspects of the case in terms of a race-based challenge." *Pryor v. Hoskins*, 774 N.E.2d 943, 954 n.5 (Ind. Ct. App. 2002) (citing *Hernandez v. New York*, 500 U.S. 352, 111 S. Ct. 1859 (1991)).[2]

---

[2] The State does not challenge the applicability of *Batson* in this case. *See* Appellee's Br. p. 13.

[12] This case is similar to *Ashabraner v. Bowers*, 753 N.E.2d 662 (Ind. 2001), in which our supreme court reversed a jury verdict on *Batson* grounds. In that case, the plaintiff made a *Batson* objection, but the trial court failed to analyze that objection as required by *Batson*. *See id.* at 665-66. Our supreme court concluded that failure indicated "the court did not follow *Batson* even though it applies to civil cases." *Id.* at 666. On appeal, this Court conducted its own *Batson* analysis without relying on the trial court's misunderstanding of the law. *See id.* We concluded the plaintiff failed to make a prima facie case of discrimination and affirmed the trial court. *See id.* Our supreme court held that that conclusion, which we reached after an incomplete *Batson* analysis, was error:

> The trial court and the Court of Appeals did not reach the issue of whether [the defendant] could offer a race neutral explanation. Because the trial court applied the wrong standard and the Court of Appeals held that [the plaintiff] had not made out a prima facie case, we reverse and remand for a new trial.

*Id.* at 667-68.

[13] The colloquy related to Villaruel's *Batson* objection "demonstrates that the trial court did not adhere fully to the principles enunciated in *Batson* and subsequent cases." *Id.* at 666. Like the trial court in *Ashabraner*, the trial court did not analyze Villaruel's objection to the peremptory challenge and did not follow *Batson*, even though it applies to challenges based on ethnicity. *See id.* at 666.

We acknowledge that *Ashabraner* is a civil case and this is a criminal case. However, *Batson* applies equally to criminal[3] and civil cases, and this case cannot be distinguished from *Ashabraner* on that ground. *See Edmonson v. Leesville Concrete Co., Inc.* 500 U.S. 614, 111 S. Ct. 2077 (1991) (holding "in a civil trial exclusion on account of race violates a prospective juror's equal protection rights"). Therefore, *Ashabraner's* mandate that the trial court, and not an appellate court, must conduct a complete *Batson* analysis when a litigant objects to a peremptory strike on *Batson* grounds, applies squarely in this criminal case. Likewise, it is clear the *Batson* analysis must be conducted when a litigant challenges a peremptory strike of a Hispanic juror. *See Hernandez*, 500 U.S. 352, 111 S. Ct. 395. The trial court did not perform the requisite *Batson* analysis related to the State's use of a peremptory strike of Ms. V., a Hispanic juror, and we may not conduct the analysis ourselves. Instead, we reverse Villaruel's convictions.

## II. *Sufficiency of the Evidence*

"When, as here, reversal is required because of trial error, and a defendant presents a claim of insufficient evidence, an acquittal instead of a new trial is required if the proof of guilt is insufficient in light of the evidence presented at trial." *Miller v. State*, 916 N.E.2d 193, 198 (Ind. Ct. App. 2009) (citation omitted), *trans. denied*. When reviewing the sufficiency of the evidence,

---

[3] In light of the liberty interest at stake in this criminal case, the protections afforded by *Batson* may be of heightened importance in order to safeguard the defendant's and juror's rights and the public's confidence in our jury system.

"appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict." *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007) (quotations omitted) (citation omitted) (emphasis omitted). It is the fact finder's role to assess the credibility of the witnesses and weigh the evidence. *Id*. Appellate courts must consider conflicting evidence most favorably to the trial court's ruling and affirm the conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Id.* (quotations omitted) (citation omitted).

[16] Villaruel contends the evidence was not sufficient to support his intimidation conviction.[4] Under the version of Indiana Code Section 35-42-2-1 (b)(1) in effect at the time Villaruel committed this offense, the State was required to prove he communicated a threat to a law enforcement officer with the intent that the officer be placed in fear of retaliation for a prior lawful act in order to convict him of intimidation as a Class D felony. Villaruel contends only that the evidence is not sufficient to prove he knowingly committed this offense. Specifically, he argues he did not recall or had little recall of threatening Officer Cummins. He also argues he was intoxicated at the time. Finally, he argues, "his statements were angry rants and abusive language that should not have been taken seriously, that at the time he engaged in the conduct and communications complained of, he was not aware of a high probability he was doing so . . . ." Appellant's Br. p. 16. However, voluntary intoxication is not a

---

[4] Villaruel does not challenge the sufficiency of the evidence with regard to his battery conviction.

defense in a criminal prosecution. *Manzano v. State*, 12 N.E.3d 321, 327 n.2 (Ind. Ct. App. 2014), *trans. denied*; *see also Berry v. State*, 969 N.E.2d 35, 38 (Ind. 2012).

Officer Cummins testified Villaruel "progressively got more belligerent." Tr. p. 161. His statements escalated from name calling to relatively minor threats of physical harm and then to threats to Officer Cummins's life and, finally, to the lives of Officer Cummins's family. Villaruel's threats were specific with regard to how he would encounter Officer Cummins and his family in order to carry out the threats. From this evidence a reasonable fact finder could find Villaruel intended to place Officer Cummins in fear for his lawful acts. The evidence is thus sufficient to support Villaruel's conviction, and double jeopardy presents no bar to retrial on this charge. *See Slayton v. State*, 755 N.E.2d 232, 237 (Ind. Ct. App. 2001).

## Conclusion

The trial court erred by not undertaking the required *Batson* analysis. Double jeopardy does not bar the State from retrying Villaruel. We reverse and remand for a new trial.

Reversed and remanded.

Robb, J., and Altice, J., concur.